# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CANO HEALTH, INC., *et al.*, | : | Case No. 24–10164 (KBO) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | Re: Docket No. 16 |

---------------------------------------------------------- x

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 FOR (I) AUTHORITY TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL (C) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANT ADEQUATE PROTECTION, (E) MODIFY THE AUTOMATIC STAY, AND (F) SCHEDULE FINAL HEARING, AND (II) RELATED RELIEF

Upon the motion, dated February 5, 2024 (Docket No. 16) (the "**Motion**")[2] of Cano Health, Inc. and its subsidiaries, as debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363, 364, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of this interim order (this "**Interim Order**"):

    (i)    authorizing Cano Health, LLC, in its capacity as borrower (the "**DIP Borrower**"), to obtain postpetition financing, and for each of the other Debtors (the Debtors, other than the DIP Borrower, the "**DIP Guarantors**") to guarantee unconditionally,

---

[1] A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/CanoHealth. The Debtors' mailing address is 9725 NW 117th Avenue, Miami, Florida 33178.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion or the DIP Credit Agreement (defined below), as applicable.

on a joint and several basis, the DIP Borrower's obligations pursuant to and in connection with such superpriority senior secured multiple draw term loan credit facility (the "**DIP Facility**") in the aggregate principal amount of $150,000,000 (the "**New Money Commitments**"), of which (i) an initial draw amount of up to $50,000,000 (the "**Initial DIP Loans**") will be made available to be drawn in a single drawing upon entry of this Interim Order and satisfaction of the other applicable conditions set forth in the DIP Credit Agreement (as defined below), and (ii) an additional amount of up to $100,000,000 (the "**Final Term Loans**" and, together with the Initial DIP Loans, the "**DIP Loans**") will be funded upon entry of the Final Order and made available upon satisfaction of the applicable conditions set forth in the DIP Credit Agreement attached hereto as **Exhibit A** and all other terms and conditions set forth in the other DIP Documents (defined below); and

(ii)    authorizing the DIP Borrower and the DIP Guarantors to (a) enter into and perform under that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement*, dated as of February 5, 2024, among the DIP Borrower, the lenders party thereto (collectively in such capacities, the "**DIP Lenders**"), and Wilmington Savings Fund Society, FSB, as administrative agent, and collateral agent (in such capacities, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**") (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Credit Agreement**") and the other DIP Documents (defined below); (b) enter into and perform under that certain Escrow Agreement (the "**Escrow Agreement**"), among the DIP Borrower, the DIP Agent, and a designated escrow agent (the "**Escrow Agent**") (each of the foregoing, together with this Interim Order, the Final Order (defined below), and all agreements, documents, and instruments delivered or executed in connection therewith (including any fee letters or schedules executed in connection with the DIP Facility, the Escrow Agreement, and the Fronting Fee (as defined in the DIP Credit Agreement), and any guarantee and security documentation), collectively, the "**DIP Documents**"); and (c) perform such other and further acts as may be required in connection with the DIP Documents;

(iii)    authorizing the Debtors to use the proceeds of the DIP Loans and the Prepetition Collateral including Cash Collateral (defined below), in each case (x) solely in accordance with the Approved DIP Budget (defined below) (subject to any Permitted Variance (defined below) set forth herein and in the DIP Credit Agreement), and (y) to provide working capital for, and for other general corporate purposes of, the Debtors and certain of the Debtors' subsidiaries, including payment of any Adequate Protection Payments (which, for the avoidance of doubt, shall not have to be in accordance with the Approved DIP Budget) (defined below);

(iv)    granting adequate protection to the Prepetition Secured Parties  (defined below) to the extent of any Diminution in Value (defined below) of their interests in the Prepetition Collateral;

(v)    granting valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in substantially all of the

property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtors' estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (defined below) to secure the DIP Loans, subject only to the (x) the Fee Reserve Account and the Carve Out (defined below) and (y) other valid, perfected and unavoidable liens, if any, existing as of the Petition Date that, by operation of law or as permitted by the Prepetition Documents, are senior to the liens and/or security interests of the Prepetition Secured Parties as of the Petition Date to the extent permitted by section 546(b) (the "**Prior Senior Liens**");

(vi)    granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Agent and the DIP Lenders with respect to the DIP Obligations (defined below) over any and all administrative expenses of any kind or nature, subject and subordinate only to the payment of the Fee Reserve Account and the Carve Out on the terms and conditions set forth herein and in the other DIP Documents;

(vii)   waiving the Debtors' and the Debtors' estates' right to surcharge the DIP Collateral (defined below) and, subject to entry of the Final Order, the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(viii)  providing for the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to the DIP Secured Parties, and subject to entry of the Final Order, the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral or the Prepetition Collateral, as applicable;

(ix)    pursuant to Bankruptcy Rule 4001, holding an interim hearing (the "**Interim Hearing**") on the Motion to consider entry of this Interim Order;

(x)     scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and the entry of a final order (the "**Final Order**"), and approving the form of notice with respect to the Final Hearing; and

(xi)    granting related relief.

The Court having considered the Motion, the exhibits thereto, the *Declaration of Mark Kent in Support of Debtors' Chapter 11 Petitions* (Docket No. 14) (the "**Kent Declaration**"), the *Declaration of Clayton Gring in Support of the Debtors' First Day Relief* (Docket No. 15) (the "**Gring Declaration**" and, together with the Kent Declaration, the "**First Day Declarations**"), the *Declaration of Drew Talarico in Support of Motion of Debtors Pursuant to*

*11 U.S.C. §§ 105, 361, 362, 363, 364, 507 and 552 and F. R. Bank. P. 2002, 4001, 6003, 6004, and 9014 for (I) Authority to (A) Obtain Postpetition Financing, (B)  Grant Liens and Provide Superpriority Administrative Expense Status, (C) Grant Adequate Protection, (D) Modify the Automatic Stay, and (F) Schedule a Final Hearing and (II) Related Relief* (the "**Talarico Declaration**") annexed to the Motion as <u>Exhibit A</u>; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice has been provided in accordance with the Bankruptcy Rules and Local Bankruptcy Rules; and it appearing that no other or further notice of the interim relief granted herein need be provided; and the Court having held the Interim Hearing on February 6, 2024 to consider the relief requested in the Motion on an interim basis; and upon the First Day Declarations, the Talarico Declaration, the record of the Interim Hearing; and all objections, reservations of rights, or other statements with respect to the relief requested in the Motion on an interim basis, if any, having been withdrawn, resolved, or overruled; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having noted the appearances of all parties in interest; and it appearing the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.    _Petition Date_.  Beginning on February 4, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing these Cases.

B.    _Debtors in Possession_.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    _Jurisdiction and Venue_.  The Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court may enter a final order consistent with Article III of the United States Constitution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.    _Committee_.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (any such committee subsequently appointed, the "**Committee**").

E.    _Debtors' Stipulations_.  Subject only to the rights of parties in interest specifically set forth in Paragraph 11 of this Interim Order (and subject to the limitations thereon contained in

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

such Paragraph or as otherwise provided in this Interim Order), the Debtors stipulate and agree that (Paragraphs E(i) through (vii) below, collectively, the "**Debtors' Stipulations**"):

      (i)    <u>CS Prepetition Loans</u>.

      (a)    *<u>CS Prepetition Credit Agreement</u>*.  The First Lien Lenders (defined below) provided loans (the "**CS Prepetition Loans**") in a total aggregate principal amount outstanding as of the Petition Date of $751,544,088.84 under that certain Credit Agreement, dated as of November 23, 2020, by and among Cano Health, LLC, a Florida limited liability company, in its capacity as borrower (the "**Prepetition CS Borrower**"), Primary Care (ITC) Intermediate Holdings, LLC, a Delaware limited liability company ("**Holdings**"), each of the lenders from time to time party thereto (collectively, the "**First Lien Lenders**"), and Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent (in such capacities, the "**First Lien Agent**" and, together with the First Lien Lenders and the other Secured Parties (as defined in the Credit Suisse Credit Agreement), the "**CS Prepetition Secured Parties**") (such credit agreement, as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**Credit Suisse Credit Agreement**" and, together with the other "Loan Documents" (as defined in the Credit Suisse Credit Agreement), the "**CS Prepetition Loan Documents**").

      (b)    *<u>CS Prepetition Obligations</u>*.  As of the Petition Date, the Prepetition CS Borrower and all of the guarantors under the Prepetition Credit Agreements (the "**Prepetition Loan Parties**") were jointly and severally indebted to the CS Prepetition Secured Parties pursuant to the CS Prepetition Loan Documents without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $751,544,089 on account of CS Prepetition Loans *plus* accrued and unpaid interest with respect thereto and any additional fees, costs,

premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Credit Suisse Credit Agreement), in each case, owing under or in connection with the CS Prepetition Loan Documents (collectively, the "**CS Prepetition Obligations**").

(c)     *CS Prepetition Liens*.  In connection with the Credit Suisse Credit Agreement, the Prepetition Loan Parties entered into the Collateral Documents (as defined in the Credit Suisse Credit Agreement, the "**CS Prepetition Security Documents**").  As set forth in the CS Prepetition Security Documents and the other CS Prepetition Loan Documents, the CS Prepetition Obligations are secured by valid, binding, perfected, and enforceable first-priority security interests in and liens on (the "**CS Prepetition Liens**") all of the Collateral (as defined in the CS Prepetition Security Documents, the "**Prepetition Collateral**"), which consists of substantially all of each Prepetition Loan Party's assets.

(d)     *Validity, Perfection, and Priority of CS Prepetition Liens and CS Prepetition Obligations*.     Subject to Paragraph E(iii) of this Interim Order, each Debtor acknowledges and agrees that, in each case, as of the Petition Date:  (A) the CS Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (B) the CS Prepetition Liens are subject and subordinate only to Prior Senior Liens (if any); (C) the CS Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties; (D) the CS Prepetition Liens encumber all of the Prepetition Collateral; (E) the CS Prepetition Liens were granted to or for the benefit of the CS Prepetition Secured Parties for fair consideration and reasonably

equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (F) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the CS Prepetition Liens or CS Prepetition Obligations exist, and no portion of the CS Prepetition Liens or CS Prepetition Obligations is subject to any challenge or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (G) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the CS Prepetition Loans, the CS Prepetition Obligations, or the CS Prepetition Liens; and (H) the CS Prepetition Obligations constitute an allowed, secured claim within the meaning of section 502 and 506 of the Bankruptcy Code.

      (ii)     <u>Side-Car Prepetition Loans</u>.

      (a)     *<u>Side-Car Credit Agreement</u>*.  The Side-Car Lenders (defined below) provided loans (the "**Side-Car Prepetition Loans**" and, together with the CS Prepetition Loans,

the "**Prepetition Loans**") in a total aggregate principal amount outstanding as of the Petition Date of $181,614,719, under that certain Credit Agreement dated as of February 24, 2023, by and among Cano Health, LLC, in its capacity as borrower (the "**Prepetition Side-Car Borrower**" and, its capacity as both Prepetition CS Borrower and Prepetition Side-Car Borrower, the "**Prepetition Borrower**"), Holdings, each of the lenders from time to time a party thereto (collectively, the "**Side-Car Lenders**" and, together with the First Lien Lenders, the "**Prepetition Lenders**"), and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (in such capacities, the "**Side-Car Agent**" and, together with the First Lien Agent, the "**Prepetition Administrative Agents**" and, the Side-Car Agent together with the Side-Car Prepetition Lenders and the other Secured Parties (as defined in the Side-Car Credit Agreement), the "**Side-Car Prepetition Secured Parties**" and, the Side-Car Prepetition Secured Parties together with the CS Prepetition Secured Parties, the "**Prepetition Secured Parties**") (such credit agreement, as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**Side-Car Credit Agreement**" and, such Side-Car Credit Agreement together the with Credit Suisse Credit Agreement, the "**Prepetition Credit Agreements**" and, the Side-Car Credit Agreement together with the other "Loan Documents" (as defined in the Side-Car Credit Agreement), the "**Side-Car Prepetition Loan Documents**" and, together with the CS Prepetition Loan Documents, the "**Prepetition Loan Documents**").

(b)      *Side-Car Prepetition Obligations*.    As of the Petition Date, the Prepetition Loan Parties were jointly and severally indebted to the Side-Car Prepetition Secured Parties pursuant to the Side-Car Prepetition Loan Documents without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $181,614,719 on account of Side-Car Prepetition Loans *plus* accrued and unpaid interest with respect thereto and

any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants',
appraisers', financial advisors', and other professionals' fees and expenses), reimbursement
obligations, indemnification obligations, guarantee obligations, other contingent obligations, and
other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and
all other Obligations (as defined in the Side-Car Credit Agreement), in each case, owing under or
in connection with the Side-Car Prepetition Loan Documents (collectively, the "**Side-Car
Prepetition Obligations**" and, together with the CS Prepetition Obligations, the "**Prepetition
Obligations**"); *provided* that, for purposes of this Interim Order only, the Applicable Premium (as
defined in the Side-Car Credit Agreement) shall be as resolved in accordance with the RSA.

(c)     *Side-Car Loan Collateral*.  In connection with the Side-Car Credit
Agreement, certain of the Prepetition Loan Parties entered into the Collateral Documents (as
defined in the Side-Car Credit Agreement, the "**Side-Car Prepetition Security Documents**" and,
together with the CS Prepetition Security Document, the "**Prepetition Security Documents**").  As
set forth in the Side-Car Prepetition Security Documents and the other Side-Car Prepetition Loan
Documents, the Side-Car Prepetition Obligations are secured by valid, binding, perfected, and
enforceable first-priority security interests in and liens (the "**Side-Car Prepetition Liens**" and,
together with the CS Prepetition Liens, the "**Prepetition Liens**") on all of the Prepetition
Collateral.

(d)     *Validity, Perfection, and Priority of Side-Car Prepetition Liens and
Side-Car Prepetition Obligations*.  Subject to Paragraph E(iii) of this Interim Order, each of the
Debtors acknowledge and agree that, in each case, as of the Petition Date:  (A) the Side-Car
Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on
and security interests in the Prepetition Collateral; (B) the Side-Car Prepetition Liens are subject

and subordinate only to Prior Senior Liens (if any); (C) the Side-Car Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties; (D) the Side-Car Prepetition Liens encumber all of the Prepetition Collateral; (E) the Side-Car Prepetition Liens were granted to or for the benefit of the Side-Car Prepetition Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (F) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Side-Car Prepetition Liens or Side-Car Prepetition Obligations exist, and no portion of the Side-Car Prepetition Liens or Side-Car Prepetition Obligations is subject to any challenge or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (G) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Side-Car Prepetition Administrative Agent, the Side-Car Prepetition Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Side-Car Prepetition Loan Documents, the Side-Car Prepetition Obligations, or the Side-Car Prepetition

11

Liens; and (H) the Side-Car Prepetition Obligations constitute an allowed, secured claim within the meaning of section 502 and 506 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, but subject to the RSA, the Debtors and the Side-Car Lenders reserve all rights with respect to any Applicable Premium (as defined in the Side-Car Credit Agreement).

   (iii) *Cash Collateral*.  All of the Debtors' cash, including, without limitation, all of the (a) cash proceeds of accounts receivable, (b) cash proceeds of other Prepetition Collateral, (c) cash proceeds of Excluded Assets (as defined in the Credit Agreement) (to the extent such cash proceeds would not otherwise constitute Excluded Assets), and (d) cash (i) in the Debtors' Deposit Accounts (as defined in the Credit Agreement) pledged pursuant to any Collateral Document as of the Petition Date or (ii) pursuant to Bankruptcy Code section 552(b), deposited into the Debtors' Deposit Accounts after the Petition Date, constitutes cash collateral of the Prepetition Secured Parties within the meaning of Bankruptcy Code section 363(a) (the "**Cash Collateral**").  Solely with respect to the Cash Collateral received before the Petition Date relating to the Prepetition Collateral, the Prepetition Secured Parties have legal, valid, binding, enforceable, and perfected security interests solely to the extent permitted under applicable law, and subject to the rights of all parties to challenge those perfected security interests.

   (iv) *Bank Accounts*.  The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "**Cash Management Order**").

   (v) *Intercreditor Provisions*.  The Prepetition Borrower, Holdings, each of the other Prepetition Loan Parties, the First Lien Agent, and the Side-Car Prepetition Administrative Agent are parties to the First Lien Intercreditor Agreement, dated as of February 24, 2023 (as

amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**First Lien Intercreditor Agreement**").   Pursuant to the terms of the First Lien Intercreditor Agreement, the First Lien Agent is the Applicable Authorized Representative (as defined in the First Lien Intercreditor Agreement) as of the Petition Date, with respect to any Shared Collateral (as defined in the First Lien Intercreditor Agreement).   The First Lien Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

(vi)     *No Control*.  As of the Petition Date, none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents, or the Prepetition Loan Documents.

(vii)     *Default*.  The Debtors are in default under the Prepetition Loan Documents as a result of these Cases, and an event of default has occurred under the Prepetition Loan Documents.

F.     *Findings Regarding the DIP Facility and Use of Cash Collateral*.

(i)     The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral (solely to the extent consistent with the Approved DIP Budget, subject to any Permitted Variance set forth herein and in the DIP Credit Agreement) to, among other things, (A) permit the orderly continuation of their businesses; (B) pay certain Adequate Protection Payments; and (C) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors and certain subsidiaries thereof.  The ability of the

13

Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern value and successful reorganization. The Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business throughout the Cases without access to the DIP Facility and authorized use of Cash Collateral.

(ii)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Secured Parties the DIP Liens (defined below) and the DIP Superpriority Claims (defined below) under the terms and conditions set forth in this Interim Order and the other DIP Documents.

(iii)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "**DIP Obligations**") shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code

section 364(e) to the extent provided therein in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted, or payments made, in each case, to the DIP Agent and/or the DIP Lenders and arising prior to the effective date of any such vacatur, reversal, or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all of the rights, remedies, privileges, and benefits granted herein.

(iv)     *Adequate Protection*.  Each of the Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, and for any diminution in the in the value of such interests (each such diminution, a "**Diminution in Value**"), subject to the reservation of rights set in Paragraph 12 (solely as it pertains to the Prepetition Collateral).

(v)     *Sections 506(c) and 552(b)*.  Without prejudice to the rights of parties in interest to object to entry of the Final Order, in light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and the Fee Reserve Account and the Carve Out and to permit the use of their Cash Collateral as set forth herein, the Prepetition Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, and similar equitable relief as set forth below and, subject to and upon entry of the Final Order, a waiver of (i) any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) the provisions of section 506(c) of the Bankruptcy Code.

(vi)     *Consent by Prepetition Administrative Agents*.   The Prepetition Administrative Agents (at the direction of the applicable Required Lenders (as defined in each of the Prepetition Credit Agreements)), on behalf of and for the benefit of each of the Prepetition

Secured Parties, has consented to, conditioned upon the entry of this Interim Order, the Debtors' incurrence of the DIP Facility and proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order, including, without limitation, the terms of the adequate protection provided for in this Interim Order.

G.     *Good Cause Shown; Best Interest*.   Good cause has been shown for entry of this Interim Order, and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.   Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.

H.     *Notice*.   In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.   Under the circumstances, the notice given by the Debtors of the Motion, the relief requested herein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the applicable Local Rules.

I.     *Arm's Length, Good Faith Negotiations*.   The terms of this Interim Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition Secured Parties.   The Prepetition Secured Parties have acted in good faith and without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of Cash Collateral, including in respect of all of the terms of this Interim Order, all documents related thereto, and all transactions contemplated by the foregoing.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      <u>DIP Financing Approved</u>.  The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.      <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to entry of the Interim Order, to the extent not withdrawn or resolved, are overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

3.      <u>Authorization of the DIP Facility and the DIP Documents</u>.

        (a)      The DIP Borrower and the DIP Guarantors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this Interim Order and the DIP Documents.  To the extent not entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Documents in good faith, and in all respects such DIP Documents shall be, subject to the terms of this Interim Order and the Final Order, consistent with the terms of the DIP Credit Agreement and otherwise acceptable to the DIP Agent (acting at the direction of the "Required Lenders" under and as defined in the DIP Credit Agreement (such lenders, the "**Required DIP Lenders**")) and the Required DIP Lenders.  Upon entry of this Interim Order and until execution and delivery of the DIP Credit Agreement and the other DIP Documents required to be delivered thereunder, the Debtors and the DIP Secured Parties shall be bound by (x) the terms and conditions and other

provisions set forth in any executed DIP Documents (including the fee letters or schedules executed in connection with the DIP Facility, the Escrow Agreement, and the Fronting Fee), with the same force and effect as if duly executed and delivered to the DIP Agent by the Debtors, and (y) this Interim Order and the executed DIP Documents (including the fee letters or letters executed in connection with the DIP Facility, the Escrow Agreement, and the Fronting Fee) shall govern and control the DIP Facility. Upon entry of this Interim Order, the Interim Order, the DIP Credit Agreement, and the other DIP Documents shall govern and control the DIP Facility. The DIP Agent is hereby authorized to execute and enter into its respective obligations under the DIP Documents, subject to the terms and conditions set forth therein and in this Interim Order. Upon execution and delivery thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the DIP Documents and this Interim Order, the terms and conditions of this Interim Order shall govern and control.

(b)     Upon entry of this Interim Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, borrowings up to an aggregate principal amount of $50,000,000 of DIP Loans subject to and in accordance with this Interim Order, without any further action by the Debtors or any other party. The Fronting Lender shall fund the Initial Draw **by no later than Wednesday, February 7, 2024 at 12:00 P.M. (Eastern Time)**.

(c)     In accordance with the terms of this Interim Order and the other DIP Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under this Interim Order and the other DIP Documents, and in accordance with the Approved DIP Budget, subject to any Permitted Variance as set forth in this Interim Order and the other DIP Documents.

Attached as **Exhibit B** hereto and incorporated herein by reference is a budget prepared by the Debtors and approved by the Required DIP Lenders in accordance with section 5.01(c) of the DIP Credit Agreement (the "**Initial DIP Budget**").

(d)     In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby, or the DIP Credit Agreement), and to pay all fees (including all amounts owed to (i) the DIP Lenders and the DIP Agent under the DIP Documents, (ii) the Escrow Agent under the Escrow Agreement, and (iii) the Backstop Fee, Participation Fee (which shall be subject to entry of a Final Order), and Fronting Fee (each as defined in the DIP Credit Agreement)) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(1)     the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent required thereby;

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, and the Required DIP Lenders may reasonably agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents or the DIP Obligations that are not material; *provided* that any such non-material amendment shall be provided to the U.S. Trustee and counsel for the Committee, to the extent one has been appointed at such time;

(3)     the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP

Documents or the Motion,  including, (x) all premiums, fees, expenses and other amounts owed to the DIP Agent and the DIP Lenders (which premiums, fees and expenses, in each case, are deemed approved upon entry of this Interim Order), including, without limitation, the Backstop Fee, the Participation Fee  (which shall be subject to entry of a Final Order), and Fronting Fee and (y) all reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Interim Order (whether incurred or earned before or after the Petition Date, including, for the avoidance of doubt, (a) Gibson, Dunn & Crutcher LLP (as counsel), Evercore Group L.L.C. (as investment bank and financial advisor), Berkeley Research Group, LLC (as financial advisor), Pachulski, Stang, Ziehl & Jones LLP (Attn: Laura Davis Jones) (as Delaware bankruptcy counsel), and any other specialty counsel and other professionals necessary to represent the interests of the DIP Lenders and the ad hoc group of the Prepetition Lenders (the "**DIP/First Lien Group**") in connection with the Cases (collectively,  the "**DIP/First Lien Advisors**"); and (b) ArentFox Schiff LLP and their Delaware bankruptcy counsel, as counsel to the DIP Agent, and, to the extent necessary to exercise its rights and fulfill its obligations under the DIP Documents, one counsel to the DIP Agent in any jurisdictions reasonably required (collectively, the "**DIP Agent Advisors**"), which such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payments be required to file with respect thereto any interim or final fee application with the Court, provided that any fees and expenses of a professional shall be subject to the provisions of Paragraph 19 of this Interim Order; and

(4)    the performance of all other acts required under or in connection with the DIP Documents, including, without limitation, pursuant to the Escrow Agreement.

(e)    Upon entry of this Interim Order and subject to the Fee Reserve Account and the Carve Out, the DIP Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Interim Order for all purposes during the Cases, any subsequently converted Case of any Debtor to a case under chapter 7 of the Bankruptcy Code, and after any dismissal of any Case.  No obligation, payment, transfer,

or grant of security under the DIP Credit Agreement, the other DIP Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted to or on behalf of (a) the DIP Agent or any DIP Secured Parties or (b) subject to the reservation of rights set in Paragraph 12 (solely as it pertains to the Prepetition Collateral), the Prepetition Secured Parties, in each case, pursuant to the DIP Documents, the provisions of this Interim Order, or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code (and, solely in the case of waivers of rights under sections 506(c) and the "equities of the case" exception of section 552(b), in each case solely as to the Prepetition Secured Parties, subject to the entry of the Final Order).  For the avoidance of doubt, and notwithstanding anything to the contrary in any Prepetition Loan Document, DIP Document, any additional document, instrument, certificate and/or agreement related to any of the foregoing, in no event shall any property, proceeds, cash, cash equivalents, or other property placed or held in the escrow account established pursuant to the Escrow Agreement at any time be, or be deemed to be, property of any of the Debtors, of any the Debtors' affiliates or subsidiaries, or of any of the Debtors' estates and the parties to the Escrow Agreement have acknowledged and agreed to the foregoing.

(f)     The DIP Guarantors are hereby authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Interim Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.     <u>Budget and Variance Reporting</u>.

(a)     On February 12, 2024 and on each subsequent Monday thereafter the Borrower will deliver to the Administrative Agent and the Lender Advisors a statement with the Debtors' Liquidity (as defined in the DIP Credit Agreement) as of the close of the previous Business Day.

(b)     On March 7, 2024 and on the Thursday of each fourth week thereafter (or more frequently if determined by the Debtors), the Debtors will deliver to the Administrative Agent and the DIP/First Lien Advisors an updated budget for the subsequent 13-week period (a "**Subsequent DIP Budget**"), which shall be in substantially the same form as the Initial DIP Budget.  Any Subsequent DIP Budget shall be deemed to constitute the "Approved DIP Budget" solely upon approval by the Required DIP Lenders (which must be in writing, email being sufficient) in their sole discretion; *provided*, that the Required DIP Lenders shall be deemed to have approved any Subsequent DIP Budget unless the Required DIP Lenders (or the DIP Agent acting at the direction of the Required DIP Lenders) have objected to such Subsequent DIP Budget within five (5) days after delivery of the same.  In the event the conditions for the most recently delivered Subsequent DIP Budget to constitute an "Approved DIP Budget" are not met as set forth herein, the prior Approved DIP Budget shall remain in full force and effect and the Debtors shall be required to work in good faith with the Required DIP Lenders to modify such Subsequent DIP Budget until the Required DIP Lenders approve such Subsequent DIP Budget as an "**Approved DIP Budget**."

(c)     Permitted Variances (defined below) shall be tested on February 22, 2024 and on the Thursday of each second week thereafter (each such date, a "**Testing Date**"), the Debtors shall deliver to the DIP Agent and the DIP/First Lien Advisors a budget variance report/reconciliation in form reasonably satisfactory to the Required DIP Lenders (the "**Approved DIP Budget Variance Report**"), setting forth in detail:

(1)     the Debtors' operating disbursements (the "**Actual Disbursements**") on a line-by-line and aggregate  basis for the two-week period ending on the Sunday preceding the applicable Testing Date (the "**Disbursements Testing Period**");

(2)     the Debtors' total receipts (collectively, the "**Actual Receipts**"), on a line-by-line and aggregate basis for the four-week period ending on the Sunday preceding the applicable Testing Date (the "**Receipts Testing Period**", and together with the Disbursements Testing Period, each a "**Testing Period**");

(3)     a comparison (whether positive or negative, in dollars and expressed as a percentage) of (1) the Actual Receipts (and each line item thereof) for the Receipts Testing Period to the amount of Debtors' projected cash receipts (and each line item thereof) and (2) the Actual Disbursements (and each line item thereof) for the Disbursements Testing Period to the amount of Debtors' projected disbursements (and each line item thereof), in each case, as set forth in the Approved DIP Budget for the applicable Testing Period; and

(4)     as to each variance contained in the Approved DIP Budget Variance Report, an indication as to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any variance.

(d)     The Debtors shall not permit on any Testing Date:

(1)     the Debtors' Actual Disbursements (excluding professional fees and debt service) during the Disbursement Testing Period (in the aggregate) to be more than 115% of the projected disbursements (excluding professional fees and debt service) for such period (in the aggregate as reflected in the "Total Operating Disbursements" line in the Approved DIP Budget) as set forth in the Approved DIP Budget; provided, that to the extent there is any unused variance capacity in any Disbursement Testing Period such amounts shall be permitted to roll-forward and be applied to offset Debtor's Actual Disbursements during the immediately following Disbursements Testing Period; and

(2)     the Debtors' Actual Receipts during the Receipts Testing Period (in the aggregate) to be less than 85% of the projected receipts (in the aggregate as reflect in the "Total Receipts" line in the Approved DIP Budget) for

such period as set forth in the Approved DIP Budgets (the variances permitted by clauses (A) and (B), the "**Permitted Variances**").[4]

(e)      Concurrent with the delivery of any Subsequent DIP Budget, the Borrowers shall provide a forecast, by professional, of expected professional fee accruals corresponding to the same Testing Period as such Subsequent DIP Budget (the "**Professional Fee Forecast**").   The Professional Fee Forecast shall also contain the accruals (and cash disbursements) to each professional for the preceding four week period prior to the forecast; provided that if the preceding week is not available, then the accruals (and cash disbursements) should be for the last four-week period that accruals (and cash disbursements) are available.  For the avoidance of doubt, the Professional Fee Forecast shall be inclusive of each professional that would be included in the "Professional Fees" line of any Approved DIP Budget.

(f)      The Debtors shall comply with the liquidity reporting and maintenance covenants set forth in Sections 5.01 and 6.14 of the DIP Credit Agreement.

5.      <u>Access to Records</u>.  The Debtors shall provide the DIP/First Lien Advisors with all reporting and other information required to be provided to the DIP Agent under the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to counsel to the Debtors (email being sufficient), the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Secured Parties shall be provided

---

[4]   For the avoidance of doubt, all references in this Interim Order and the DIP Documents to "Approved DIP Budget" shall mean the Approved DIP Budget as it is subject to the Permitted Variances.

with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

6.      <u>DIP Superpriority Claims</u>.  Subject only to the Fee Reserve Account and the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "**DIP Superpriority Claims**") (without the need to file any proof of claim) to the extent set forth in the Bankruptcy Code, with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and, to the extent provided by the Bankruptcy Code, over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "**Avoidance Actions**").  Except as set forth in this Interim Order or the Final Order, no other superpriority claims shall be granted or allowed in these Cases.

7.    <u>DIP Liens</u>.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clauses (a) and (b) below being collectively referred to as the "**DIP Collateral**"),[5] subject only to (x) Prior Senior Liens and (y) the Fee Reserve Account and the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Secured Parties, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):[6]

(a)    <u>First Priority Lien On Any Unencumbered Property</u>.  Subject only to the Fee Reserve Account and the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors (subject to certain exclusions as set forth in the DIP Credit Agreement), whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), a 100% pledge of equity interests in any direct or indirect  subsidiaries and all unencumbered assets of the Debtors; all prepetition property

---

[5]    Notwithstanding anything to the contrary contained herein, any loan documents, or any other Orders of the Court, unless otherwise expressly permitted by the terms of the applicable lease, any liens granted under this Order shall not include the Debtors' real property leases, the leased premises, or the Debtors' interests in any such leases or premises, but shall include solely the proceeds from the disposition of all such leases.

[6]    <u>Note</u>: Excluded Property concept to be addressed in DIP Credit Agreement.

and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors (whether maintained with the DIP Agent or otherwise); all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors; all patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing, and, subject to entry of the Final Order, all proceeds and property recovered in respect of Avoidance Actions (collectively, to the extent unencumbered as of Petition Date, the "**Previously Unencumbered Property**"); *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, that to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Interim Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing.

(b)    <u>Liens Priming the Prepetition Liens</u>.    Subject only to the Fee Reserve Account and the Carve Out, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all property of the Debtors that was subject to the Prepetition Liens, including, without limitation, the Prepetition Collateral and Cash Collateral; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, that to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Interim Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing.

(c)    <u>Liens Junior to Certain Other Liens</u>.    Subject only to the Fee Reserve Account and the Carve Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Debtors that is encumbered by Prior Senior Liens, immediately junior to such Prior Senior Liens.

8.    <u>Adequate Protection for the Prepetition Secured Parties</u>.    Subject only to the Fee Reserve Account and the Carve Out, the DIP Obligations, and the terms of this Interim Order (including, for the avoidance of doubt, the reservation of rights set forth in Paragraph 12), pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for any Diminution in Value resulting from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Fee Reserve Account and the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition Administrative Agents, for the benefit of

themselves and the other Prepetition Secured Parties, are hereby granted the following (collectively, the "**First Lien Adequate Protection Obligations**"):

(a)      <u>First Lien Adequate Protection Liens</u>.    As security for any Diminution in Value, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Interim Order (together, the "**First Lien Adequate Protection Liens**"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral and, upon entry of the Final Order, all proceeds or property recovered from Avoidance Actions.  Subject to the terms of this Interim Order, the First Lien Adequate Protection Liens shall be subordinate only to the (A) Fee Reserve Account and the Carve Out, (B) the DIP Liens, and (C) Prior Senior Liens.  The First Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code).

(b)      <u>Adequate Protection Superpriority Claims</u>.    As further adequate protection, and to the extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, allowed administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "**Adequate Protection Superpriority Claims**"), but junior to the Fee Reserve Account and the Carve Out and the DIP Superpriority Claims.  Subject to the Fee Reserve Account and the Carve Out and the DIP Superpriority Claims in all respects, the Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative

expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.

(c)    First Lien Adequate Protection Payments.  As further adequate protection, the Debtors are authorized and directed to pay, in accordance with the terms of Paragraph 19 of this Interim Order, all reasonable and documented fees and expenses (the "**Adequate Protection Fees**"), whether incurred before or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to Paragraph 3(d)(3) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Interim Order, including, for the avoidance of doubt, of (i) the DIP Agent Advisors; (ii) Freshfields Bruckhaus Deringer US LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Mark F. Liscio, Esq. and Scott D Talmadge, Esq.), as counsel to the First Lien Administrative Agent and Potter Anderson & Carroon LLP, as Delaware counsel to the First Lien Administrative Agent; (iii) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020-1095, as counsel to the Side-Car Prepetition Administrative Agent; and (iv) the DIP/First Lien Advisors (all payments referenced in this sentence, collectively, the "**Adequate Protection Payments**").  None of the Adequate Protection Fees shall be subject to separate approval by the Court, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d)    Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of

the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

(e)     *Other Covenants*.   The Debtors shall maintain their cash management arrangements in a manner consistent with the Cash Management Order.  The Debtors shall comply with the covenants contained in the DIP Credit Agreement regarding conduct of business, including, without limitation, preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(f)     *Reporting Requirements*.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with all reporting requirements set forth in the DIP Credit Agreement and delivering such reporting materials thereunder to the Prepetition Agents.

(g)     *Miscellaneous*.   Except for (i) the Fee Reserve Account and the Carve Out (ii) the DIP Liens and the DIP Obligations and (iii) as otherwise provided in this Paragraph 8, the First Lien Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties shall not be subject, junior, or *pari passu*, to any

31

lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under the Bankruptcy Code, including, without limitation, pursuant to section 551 or otherwise, and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including, without limitation, pursuant to section 364 or otherwise.

9.     Fee Reserve Account.

(a)     As soon as reasonably practicable following entry of this Interim Order and following the delivery of a Statement (as defined below), the Debtors shall transfer first with cash on hand and, only if such sources are insufficient, with borrowings under the DIP Facility, an amount equal to the total fees and expenses actually incurred or earned by persons or firms retained (or proposed to be retained) by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (such persons or firms, the "**Debtor Professionals**" and, such fees and expenses of the Debtor Professionals, the "**Professional Fees**") between the Petition Date and the end of the first weekly period set forth in the Approved DIP Budget as set forth on a written statement delivered to the DIP Agent and Lender Advisors at least one Business Day before any such transfer (each such statement, a "**Statement**"), which funds shall be deposited first into a segregated bank account at one of the Debtors' existing banks and then, once established by the Debtors or the Debtors' advisors, into a segregated account at a depository determined by the Debtors or the Debtors' advisors in their sole discretion, in each case not subject to the control, liens, security interests, or claims of the DIP Agent or any DIP Lender, other than the Reversionary Interest (as defined below) (in each case, such accounts, the "**Fee Reserve Account**"); *provided* that, the U.S. Trustee reserves its rights with respect to the location and amount of the Fee Reserve Account for compliance purposes pursuant to section 345 of the Bankruptcy Code.  Thereafter, on a weekly basis, one Business Day following the delivery of a Statement, the Debtors shall transfer

into the Fee Reserve Account first with cash on hand and, only if such sources are insufficient, with DIP Loan proceeds, an amount equal to the aggregate unpaid amount of the Professional Fees actually incurred or earned as of such date.

(b)     The Debtors shall be authorized to use funds held in the Fee Reserve Account to pay Professional Fees as they become allowed and payable pursuant to any interim or final order of this Court; provided that when all Allowed Professional Fees (as defined below) have been paid in full (regardless of when such Professional Fees are allowed by this Court) and the Carve Out (as defined below) is funded, any funds remaining in the Fee Reserve Account shall revert to the Debtors for use solely in accordance with this Interim Order and the other DIP Documents and subject to the DIP Liens and DIP Superpriority Claims and First Lien Adequate Protection Liens and Adequate Protection Superpriority Claims as set forth herein; *provided*, *further*, that the Debtors' obligations to pay allowed Professional Fees shall in no way be limited or deemed limited to funds held in the Fee Reserve Account.

(c)     Notwithstanding anything herein to the contrary, funds transferred to the Fee Reserve Account shall (i) be held in trust exclusively for the Professional Persons, including with respect to obligations arising out of the Carve Out, (ii) not be subject to any liens or claims granted to the DIP Agent or DIP Lenders herein and shall not constitute DIP Collateral other than the Reversionary Interest, (iii) be treated as Cash and Cash Equivalents (as defined in the DIP Credit Agreement) under Section 4.03(k) of the DIP Credit Agreement, and (iv) be included in the calculation of Liquidity so long as no Event of Default exists under and as defined in the DIP Credit Agreement.

10.     <u>Carve Out</u>.  As used in this Order and the DIP Documents, the "Carve Out" shall be comprised of the following components:

(a)     <u>Clerk and U.S. Trustee Fees</u>.  All fees required to be paid to the Clerk of this Court and U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code (collectively, "**Clerk and UST Fees**").

(b)     <u>Chapter 7 Trustee Fees</u>.  All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "**Chapter 7 Trustee Fee Cap**").

(c)     <u>Ombudsman Fees</u>.   All reasonable fees and expenses up to $100,000 incurred by any patient care ombudsman appointed in these chapter 11 cases (the "**Ombudsman Fee Cap**").

(d)     <u>Allowed Professional Fees</u>. To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all accrued and unpaid Professional Fees (and upon allowance by this Court, the "**Allowed Professional Fees**") incurred or earned by the Professional Persons  (i) at any time before the date of the delivery of the Carve Out Trigger Notice, and without regard to whether such fees and expenses are provided for in the Approved DIP Budget, and (ii) at any time after the date of delivery of the Carve Out Trigger Notice in an aggregate amount not to exceed $4,750,000 (collectively, the "**Post-Trigger-Notice Carve Out Fee Cap**").  The Post-Trigger-Notice Carve Out Fee Cap shall not be reduced or increased by the amount of any compensation or reimbursement of expenses paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked.

(e)     <u>Carve Out Trigger Notice</u>. For purposes of this Interim Order, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Required DIP Lenders, which notice shall be delivered) to the Debtors, the Debtors' lead restructuring counsel (Weil, Gotshal & Manges LLP), the U.S. Trustee,

34

and lead counsel to the Committee, which notice (i) may be delivered only upon the occurrence and during the continuation of an Event of Default (as defined below and subject to any applicable grace periods, waivers, or forbearances) and acceleration of the DIP Obligations under the DIP Credit Agreement and (ii) shall expressly state that the Carve Out is triggered and the Post-Trigger-Notice Carve Out Fee Cap has been invoked.

(f)     Fee Reserve Account Funding After a Carve Out Trigger Notice. On the day on which a Carve Out Trigger Notice is received by the Debtors (with a copy to lead counsel to the Committee), the Carve Out Trigger Notice shall constitute a demand to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to transfer the Fee Reserve Account cash in an amount equal to all remaining unfunded portions of the Carve Out as provided herein to be held in trust to pay Allowed Professional Fees. Following delivery of a Carve Out Trigger Notice and the transfer set forth in the prior sentence, the DIP Agent shall deposit into the Fee Reserve Account any cash swept or foreclosed upon (including cash received as a result of the sale or other disposition of any assets) until the Fee Reserve Account has been fully funded in an amount equal to all remaining unfunded portions of the Carve Out as provided herein. Notwithstanding anything to the contrary in the DIP Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Obligors until the Fee Reserve Account has been fully funded in an amount equal to the Carve Out. Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Fee Reserve Account shall not constitute DIP Loans, (ii) the failure of the Fee Reserve Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Carve Out, Fee Reserve Account, or Approved DIP Budget or

any of the foregoing be construed as a cap on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by this Court at any time (whether by interim order, final order, or otherwise), nor be construed as a cap on Clerk and UST Fees.

(g)     To the extent such cash on hand is not sufficient to fully fund the Fee Reserve Account, the Carve Out Trigger Notice shall be deemed to constitute a draw request by the Borrower to the Agent under the DIP Documents for DIP Loans (on a pro rata basis based on the then outstanding DIP Commitments) to fully fund the Fee Reserve Account, following delivery of the Carve Out Trigger Notice to the Debtors, notwithstanding anything in the DIP Documents to the contrary, including with respect to the existence of any default or Event of Default, or any termination of the DIP Commitments thereunder following an Event of Default. Any such funding of the Fee Reserve Account shall be added to, and made part of, the DIP Obligations secured by the Collateral and shall otherwise be entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable nonbankruptcy law. Funds transferred to the Fee Reserve Account shall not (i) be subject to the DIP Liens, the DIP Superpriority Claims, or any claim, liens or security interests granted to any other party, (ii) constitute DIP Collateral or (iii) constitute Cash Collateral; *provided* that the DIP Agent (on behalf of the DIP Secured Parties) and Prepetition Secured Agents (on behalf of the Prepetition Secured Parties) shall have a reversionary interest in the funds held in the Fee Reserve Account, if any, after all amounts included in the Carve Out, including any Allowed Professional Fees, have been paid in full pursuant to a final order of this Court (regardless of when such Professional Fees are allowed by this Court) (the "**Reversionary Interest**") and, to the extent such funds remain, such funds shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties, unless the DIP Obligations have been Paid in Full (other than contingent indemnification obligations for which no claim has

been asserted) and all DIP Commitments terminated. All funds in the Fee Reserve Account shall be used to pay the obligations set forth in the definition of the Carve Out until such obligations are paid in full. All payments and reimbursements made from the Fee Reserve Account after the delivery of a Carve Out Trigger Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(h)     Priority of Carve Out.  The Carve Out shall be senior to the DIP Liens and the DIP Superpriority Claims.  Notwithstanding anything to the contrary contained in this Interim Order or any DIP Documents, the security interests, Liens and claims granted to any of the DIP Parties (including, without limitation, the DIP Liens and DIP Superpriority Claims) under, pursuant to or in connection with the DIP Facility, any DIP Document, or this Order, as applicable, shall be subject to payment in full in cash of the amounts due under the Carve Out.

(i)     Notwithstanding the foregoing, so long as a Carve Out Trigger Notice has not been delivered in accordance with this Order: (i) the Debtors shall be permitted to pay Professional Fees, as the same may become due and payable, including on an interim basis, solely in accordance with orders of this Court, and (ii) such payments shall not reduce, or be deemed to reduce, the Post-Trigger-Notice Carve Out Fee Cap.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred or earned in connection with these chapter 11 cases or any Successor Cases.  Nothing in this Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

11.    <u>Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition Secured</u> <u>Parties</u>.  Subject only to the Fee Reserve Account and the Carve Out, notwithstanding any other provision in this Interim Order or the DIP Documents to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the rights of any of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection at and following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the Fee Reserve Account and the Carve Out and the claims and liens of the DIP Secured Parties granted under this Interim Order and the other DIP Documents; (b) any of the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Documents, the Prepetition Loan Documents, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the DIP Secured Parties or the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code solely in connection with the DIP Facility, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Prepetition Secured Parties.  The delay in or failure of the DIP Secured Parties and/or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Prepetition Secured Parties' rights and remedies.  For all adequate protection purposes throughout the Cases, each of the Prepetition

Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

12. _Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims._ Subject to the Challenge Period (defined below), the stipulations, admissions, waivers, and releases contained in this Interim Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors in all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (defined below) as of the Petition Date. The stipulations, admissions, releases, and waivers contained in this Interim Order, including, the Debtors' Stipulations, shall be binding upon all other parties in interest, including any Committee, chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors, and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i) before seventy-five (75) calendar days after entry of the Interim Order, (the "**Challenge Period**" and, the date of expiration of the Challenge Period, the "**Challenge Period Termination Date**"); _provided, however_, that if a party in interest files a standing motion before the end of the Challenge Period, then the Challenge Period shall be tolled during the pendency of such motion (but solely for the party seeking standing); and _further provided_ that if, prior to the end of the Challenge Period, (x) the cases convert to chapter 7, or (y) if a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended by the later of (A) the time remaining under the Challenge Period plus ten (10) calendar days or (B) such other time as ordered by the Court solely with respect to any such trustee,

commencing on the occurrence of either of the events discussed in the foregoing clauses (x) and (y); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding:  (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Administrative Agents and the Prepetition Secured Parties; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Obligations (any such claim, a "**Challenge**"), and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.  Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled):  (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases.  If any such adversary proceeding or contested matter is timely and properly

filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates. Furthermore, if any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date. Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, any Committee appointed in the Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation any challenges (including a Challenge) with respect to the Prepetition Loan Documents, the Prepetition Liens, and the Prepetition Obligations, and a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.

13. <u>Termination Date</u>. On the Termination Date (defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all Commitments will terminate, and the Fee Reserve Account shall be funded as set forth in this Interim Order; (b) all authority to use Cash Collateral shall cease; *provided* that during the Remedies Notice Period (defined below), the Debtors may use Cash Collateral solely to fund the Fee Reserve Account and pay payroll, make Adequate Protection Payments and pay other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved DIP Budget, subject to any Permitted Variance provided for in the DIP Credit

Agreement; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order.

14.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "**Events of Default**"):  (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, (b) the failure of the Debtors to comply with any of the Required Milestones (defined below), or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement.

15.    <u>Milestones</u>.  The Debtors' failure to comply with those certain case milestones set forth in section 5.15 of the DIP Credit Agreement (collectively, the "**Required Milestones**") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement.

16.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, subject to the Remedies Notice Period (defined below), (a) the DIP Agent (at the direction of the Required DIP Lenders) may declare (email being sufficient) (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and

(iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP Borrower and (b) subject to Paragraph 12 (b), the DIP Agent (at the direction of the Required DIP Lenders) may declare (email being sufficient) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the **"Termination Date"**). The automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties is hereby modified so that five (5) business days after the Termination Date (the "**Remedies Notice Period**"): (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Interim Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out and (b) subject to the foregoing clause (a), the applicable Prepetition Secured Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the applicable Prepetition Loan Documents and this Interim Order with respect to the Debtors' use of Cash Collateral. During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Except as set forth in this Paragraph 15 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order. Unless the Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the

Remedies Notice Period, the DIP Agent (at the direction of the Required DIP Lenders), and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, and in the DIP Documents and Prepetition Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim Order. Notwithstanding anything to the contrary herein, upon the occurrence and continuation of an event of default, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties may enter upon the Debtors' leased premises only as provided by: (i) a separate written agreement by and between the applicable landlord and the DIP Agent or DIP Lenders; (ii) applicable non-bankruptcy law; or (iii) an order from the Bankruptcy Court on no less than five (5) days' notice to the landlord for the affected leased premises.

17.    <u>Limitation on Charging Expenses Against Collateral</u>. No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Fee Reserve Account and the Carve Out), the DIP Agent, or the DIP Lenders or (b) subject to entry of the Final Order, the Prepetition Collateral (except to the extent of the Fee Reserve Account and the Carve Out) or the Prepetition Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

18.    <u>Use of Cash Collateral</u>.    The Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties, but solely for the purposes set forth in this Interim

Order and in accordance with the Approved DIP Budget (subject to permitted variances as set forth in this Interim Order and the DIP Documents), including, without limitation, to make payments on account of the Adequate Protection Obligations (which, for the avoidance of doubt, shall not have to be in accordance with the Approved DIP Budget) provided for in this Interim Order, from the date of this Interim Order through and including the date of termination of the DIP Credit Agreement.  Except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

19.    <u>Expenses and Indemnification</u>.

(a)    The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, fronting, closing, arrangement, participation, or commitment payments (including all payments and other amounts owed to the DIP Lenders), the Backstop Fee, the Participation Fee (which shall be subject to entry of a Final Order), the Fronting Fee, administrative agent's fees, collateral agent's fees, and escrow agent's fees (including all fees and other amounts owed to the DIP Agent), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in Paragraphs 3(d)(3)and 8(c) of this Interim Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Interim Order or the DIP Documents. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Credit Agreement) all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, the Prepetition Administrative Agents, and the DIP/First Lien Group, incurred or earned on or prior to such date

without the need for any professional engaged by the DIP Lenders, the DIP Agent, the Prepetition

Administrative Agents, or the DIP/First Lien Group to first deliver a copy of its invoice as provided

in clause (b). Notwithstanding anything to the contrary in this Interim Order, nothing in this

Interim Order is approving the Participation Fee or authorizing payment of the Participation Fee.

(b)     The Debtors shall be jointly and severally obligated to pay all fees

and expenses described above, which obligations shall constitute the DIP Obligations. The

Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements

of professionals to the extent provided for in Paragraphs 3(d)(3)and 8(c) of this Interim Order

(collectively, the "**Lender Professionals**" and, each, a "**Lender Professional**") no later than

ten (10) business days (the "**Review Period**") after the receipt by counsel for the Debtors, any

Committee, or the U.S. Trustee of each of the invoices therefor (the "**Invoiced Fees**") and without

the necessity of filing formal fee applications, including such amounts arising before the Petition

Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and

categorized expenses incurred or earned during the pendency of the Cases, and such invoice

summary shall not be required to contain time entries, but shall include a general, brief description

of the nature of the matters for which services were performed, and which may be redacted or

modified to the extent necessary to delete any information subject to the attorney-client privilege,

any work product doctrine, privilege or protection, common interest doctrine privilege or

protection, any other evidentiary privilege or protection recognized under applicable law, or any

other confidential information, and the provision of such invoices shall not constitute any waiver

of the attorney-client privilege, work product doctrine, privilege or protection, common interest

doctrine privilege or protection, or any other evidentiary privilege or protection recognized under

applicable law. The Debtors, any Committee, or the U.S. Trustee may dispute the payment of any

portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, a Debtor, any Committee that may be appointed in these Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least five (5) calendar days prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)     In addition, the Debtors will indemnify each of the DIP Lenders, the DIP Agent, and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each, an "**Indemnified Person**") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and out-of-pocket expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility as and to the extent provided in the DIP Credit Agreement.  No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Person's gross negligence, fraud, willful misconduct, or willful breach of their obligations under the DIP Facility, which indemnity shall have equal priority to the DIP Superpriority Claims.  Subject to entry of a Final Order, in no event shall any Indemnified Person or any Debtor be liable on any theory of liability for any special,

indirect, consequential, or punitive damages; provided, that this shall not affect the Debtor's indemnification obligations pursuant to the immediately preceding sentence.

20.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.     Section 507(b) Reservation.  Subject only to the Fee Reserve Account and the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

22.     Insurance.  At all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Agent as loss payee or additional insured, as applicable, thereunder.

23.     No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Agent or the Required DIP Lenders to exercise rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

24.     <u>Perfection of the DIP Liens and First Lien Adequate Protection Liens</u>.

(a)     The DIP Agent and the Prepetition Administrative Agents are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether or not the DIP Agent or the Prepetition Administrative Agents shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the Challenge Period, subject to challenge, dispute, or subordination as of the date of entry of this Interim Order. If the DIP Agent or the Prepetition Administrative Agents (at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or the Prepetition Administrative Agents (at the direction of the applicable required lenders), and the automatic stay shall be modified solely to allow such filings as provided for in this Interim Order.

(b)     A certified copy of this Interim Order may, at the direction of the applicable Required DIP Lenders, be filed with or recorded in filing or recording offices by the DIP Agent or the Prepetition Administrative Agents in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; *provided* that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Interim Order.

(c)      Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords, lessors, or other parties is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law.  Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the First Lien Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Interim Order, subject to applicable law.

25.      <u>Release</u>.  Subject to the rights and limitations set forth in Paragraph 12 of this Interim Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, each of the DIP Secured Parties and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such (collectively, the "**Related Parties**") and each of the Prepetition Secured Parties and each of their respective Related Parties, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date

hereof with respect to or relating to the DIP Obligations, the DIP Liens, the DIP Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents, as applicable, including, without limitation:  (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties and the Prepetition Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Documents.

26.    <u>Credit Bidding</u>.  The DIP Agent (at the direction of the Required DIP Lenders) and, subject to entry of the Final Order, the Prepetition Administrative Agents (at the direction of the requisite lenders under each of the Prepetition Credit Agreements) and subject to the First Lien Intercreditor Agreement) shall have the right to credit bid (either directly or through one or more acquisition vehicles) subject to section 363(k) of the Bankruptcy Code, up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).

27.    <u>Preservation of Rights Granted Under this Interim Order</u>.

(a)    Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all New Money Commitments are terminated, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or

otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in Paragraph 24 herein.

(b)     In the event this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits as and to the extent afforded in section 364(e) of the Bankruptcy Code.

(c)     Unless and until all DIP Obligations, Prepetition Obligations, and Adequate Superpriority Claims are indefeasibly paid in full, in cash, and all New Money Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except with the prior written consent of the DIP Agent, the Required DIP Lenders and, subject to the First Lien Intercreditor Agreement, the Prepetition Administrative Agents and the applicable requisite lenders under the Prepetition Credit Agreement, (x) any modification, stay, vacatur, or amendment of this Interim Order or (y) except as permitted under the DIP Documents, a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases, *pari passu* with or

senior to the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the Prepetition Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents (including the Fee Reserve Account and the Carve Out), any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the First Lien Adequate Protection Liens or the Prepetition Liens, as applicable; provided, that the DIP Documents will not permit liens other than the DIP liens to be senior to the First Lien Adequate Protection Liens or the Prepetition Liens, but junior to the DIP Liens; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (iv) an order converting or dismissing any of the Cases; or (vi) an order appointing a chapter 11 trustee in any of the Cases; *provided* that none of the foregoing shall require the Debtors to violate their fiduciary duties.

(d)     Subject to the reservation of rights set in Paragraph 12 (solely as it pertains to the Prepetition Collateral, to the extent applicable, and notwithstanding any order dismissing any of the Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations, Adequate Protection Obligations, and the Prepetition Obligations are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, First Lien Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim Order, shall, notwithstanding such dismissal, remain binding on all parties in

interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)     Subject to the reservation of rights set in Paragraph 12 (solely as it pertains to the Prepetition Collateral), to the extent applicable, and except as expressly provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the DIP Obligations, the Adequate Protection Obligations, and the Prepetition Obligations are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise

satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent (acting at the direction of the Required DIP Lenders)).

(f)     Other than as set forth in this Interim Order, subject to the Fee Reserve Account and the Carve Out, neither the DIP Liens nor the First Lien Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Cases or arising after the Petition Date, and neither the DIP Liens nor the First Lien Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

28.     <u>Limitation on Use of DIP Facility Proceeds and DIP Collateral</u>.  Notwithstanding anything to the contrary set forth in this Interim Order, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, the Fee Reserve Account, or Carve Out or proceeds thereof may be used:   (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such) under the DIP Documents, the Prepetition Loan Documents, or this Interim Order, including, without limitation,

for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed in these Cases in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Parties related to the DIP Obligations or the Prepetition Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition Obligations, or the DIP Agent's, the DIP Lenders', and the Prepetition Secured Parties' liens or security interests in the DIP Collateral or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties, or the DIP Agent's, the DIP Lenders', the Prepetition Secured Parties' respective liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens and the First Lien Adequate Protection Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations,

the DIP Liens, the First Lien Adequate Protection Liens, the Adequate Protection Obligations, the

Prepetition Obligations, or the Prepetition Liens; or (d) for prosecuting an objection to, contesting

in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or

enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the

DIP Lenders related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens

or any other rights or interests of any of the Prepetition Secured Parties related to the First Lien

Adequate Protection Liens, the Adequate Protection Obligations, the Prepetition Obligations or

the Prepetition Liens, *provided* that no more than $50,000 of the proceeds of the DIP Facility, the

DIP Collateral, or the Prepetition Collateral, in the aggregate, may be used by any Committee

appointed in these Cases, if any, solely to investigate or prosecute, within the Challenge Period (as

defined below), the claims, causes of action, adversary proceedings, or other litigation against the

Prepetition Secured Parties solely concerning the legality, validity, priority, perfection,

enforceability or extent of the claims, liens, or interests (including the Prepetition Liens and First

Lien Adequate Protection Liens) held by or on behalf of each of the Prepetition Secured Parties

related to the Prepetition Obligations.

29.     Conditions Precedent.  Except as provided for in the Fee Reserve Account and

Carve Out, no DIP Lender shall have any obligation to make any DIP Loan under the respective

DIP Documents unless all of the conditions precedent to the making of such extensions of credit

under the applicable DIP Documents have been satisfied in full or waived in accordance with such

DIP Documents.

30.     Intercreditor Provisions. Pursuant to section 510 of the Bankruptcy Code, any

applicable intercreditor or subordination provisions contained in any of the Prepetition Loan

Documents (including in the First Lien Intercreditor Agreement) shall remain in full force and

effect; *provided* that nothing in this Interim Order shall be deemed to provide liens to any Prepetition Secured Party on any assets of the Debtors except as set forth herein.

31.   <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents (with respect to the parties thereto) and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee appointed in these Cases, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition Secured Parties; *provided* that, except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents (excluding any actions taken after an exercise of remedies), the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

32.   <u>Limitation of Liability</u>.  Subject to the Final Order, in determining to make any loan under the DIP Documents or permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order and the DIP Documents, the DIP

Secured Parties and the Prepetition Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

33.    <u>No Requirement to File Claim for DIP Obligations</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Documents, this Interim Order, or applicable law.  The provisions set forth in this Paragraph are intended solely for the

purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

34.    <u>No Requirement to File Claim for Prepetition Obligations</u>.    Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the Prepetition Administrative Agents nor any Prepetition Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition Administrative Agents' or any Prepetition Lenders' rights, remedies, powers, or privileges under any of the Prepetition Loan Documents, this Interim Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

35.    <u>No Marshaling</u>.  The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Interim Order, the DIP Documents and the Prepetition Loan Documents, notwithstanding any other agreement or provision to the contrary and, subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

36.     <u>Application of Proceeds of DIP Collateral</u>.  Subject to entry of a Final Order, the DIP Obligations, unless otherwise directed by the Required DIP Lenders, shall be repaid (a) first, from the DIP Collateral comprising Previously Unencumbered Property and (b) second, from all other DIP Collateral.

37.     <u>Equities of the Case</u>.  The Prepetition Secured Parties shall each be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

38.     <u>Affiliate Transactions</u>.  Notwithstanding anything in the DIP Documents to the contrary, in no event shall any of the Debtors transfer any property to a non-Debtor affiliate (as defined under section 101(2) of the Bankruptcy Code) without the consent of the Required DIP Lenders, except in the ordinary course of business or as authorized pursuant to an order of the Court.

39.     <u>Letters of Credit</u>. Wells Fargo  and Fifth Third Bank ("**Fifth Third**") solely in their respective capacities as issuers of the letters of credit set forth in <u>Exhibit D</u> to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 362(d), and 363(b) and Fed. R. Bankr. P. 4001 for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain their Insurance Policies, Surety Bond Program, and Letters of Credit, and (B) Honor all Insurance, Surety Bond and Letters of Credit Obligations, (II) Modifying Automatic Stay, and (III) Granting Related Relief* (Docket No. 4) (the "**Insurance Motion**"), shall have recourse to the Cash Collateral collateralizing such letters of credit pursuant to the applicable terms of such letters of credit. All indebtedness or obligations owed by the Debtors to Fifth Third and Wells Fargo in connection with the letters of credit set

forth on Exhibit D to the Insurance Motion, and any other letters of credit issued, amended, increased, or to be issued, if any (the "**LCs**"), are secured by (i) in the case of Wells Fargo, deposit account number ending in 2281(the "**Wells Fargo Account**"), pursuant to the terms of that certain Security Agreement, dated as of January 13, 2022 (the "**Wells Fargo Security Agreement**") and granted by the Debtors for the benefit of Wells Fargo (the cash contained in such deposit account on the Petition Date, and any additional cash deposited thereafter as additional security required by Wells Fargo to secure the LCs, the "**Wells Fargo LC Collateral**") and (ii) in the case of Fifth Third deposit account number ending in 5001 (the "**Fifth Third Account**"), pursuant to the terms of that certain Letter of Credit Reimbursement Agreement, dated as of October 11, 2019 (the "**Fifth Third Security Agreement**") and granted by the Debtors for the benefit of Fifth Third (the cash contained in such deposit account on the Petition Date, and any additional cash deposited thereafter as additional security required by Wells Fargo to secure the LCs, the "**Fifth Third LC Collateral**" and together with the Wells Fargo LC Collateral, the "**LC Collateral**").  Wells Fargo and Fifth Third have and shall continue to have a valid and perfected, non-avoidable first-priority liens in such Wells Fargo LC Collateral and Fifth Third LC Collateral, respectively, to reimburse any amounts owed to Wells Fargo and/or Fifth Third related to any such LCs, including without limitation, any legal fees and expenses, solely to the extent that such reimbursement is provided for under the Wells Fargo Security Agreement and the Fifth Third Security Agreement, as applicable. Such liens shall not be primed by any lien granted to any post-petition lender or other person as part of any Financing Order or otherwise. As adequate protection to extent of any diminution in the value of the LC Collateral as of the Petition Date, Wells Fargo and Fifth Third shall have and are hereby granted an automatically perfected, valid, first-priority, senior replacement lien and security interest in the Wells Fargo Account and Fifth Third Account,

respectively, pursuant to Sections 361(2), 363(c)(2), 364(c)(1), 364(c)(2), 364(d)(1), 503(b)(1), 507(a)(2), and 507(b) of the Bankruptcy Code. In the event any such Cash Collateral is released to the Debtors, such Cash Collateral shall be subject to the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and the applicable rights and remedies of the DIP Agent and the Prepetition Agents, subject to the terms of this Interim Order and the First Lien Intercreditor Agreement (as applicable). By this Order, the Debtors agree that the Wells Fargo Account and the Fifth Third Accounts shall only be used to retain on deposit the LC Collateral, while the applicable letters of credit remain issued and outstanding, and for no other purpose.

40.    <u>Surety Bonds</u>. Nothing in this Interim Order shall modify, limit, alter, or expand any terms of the Debtors' Surety Bonds (as defined in the Insurance Motion), any related indemnity agreements, and/or any rights of the Debtors' sureties in any of their collateral.

41.    <u>Final Hearing</u>.  The Final Hearing on the Motion shall be held on March 7, 2024 at 10:00 a.m. (Eastern Time) and any objections or responses to entry of a final order on the Motion shall be in writing, filed with the Court, and served by no later than **4:00 p.m. (Eastern Time) on February 29, 2024** on the following:

a.  proposed attorneys for the Debtors: (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. (gary.holtzer@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), Matthew P. Goren, Esq. (matthew.goren@weil.com), and Rachael Foust, Esq. (rachael.foust@weil.com)); and (ii) proposed co-counsel for the Debtors: Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: Michael J. Merchant, Esq. (merchant@RLF.com), and Amanda R. Steele, Esq. (steele@rlf.com));

b.  counsel to the DIP Agent:  ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor New York, NY 10019 (Attn: Jeffrey R. Gleit, Esq. (jeffrey.gleit@afslaw.com));

a.  ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor New York, NY 10019 (Attn: Jeffrey R. Gleit, Esq. (jeffrey.gleit@afslaw.com))

b.  counsel to the DIP Lenders and the DIP/First Lien Group: Gibson, Dunn & Crutcher LLP, 200 Park Ave, New York, NY 10166 (Attn: Scott J. Greenberg, Esq., Michael J. Cohen, Esq. and Christina M. Brown, Esq.);

c.  counsel to the Agent under the CS Credit Agreement: Freshfields Bruckhaus Deringer US LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Mark F. Liscio, Esq. and Scott D Talmadge, Esq.);

d.  counsel to the Agent under the Side-Car Credit Agreement: White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020-1095 (Attn: Andrew Zatz, Esq.);

e.  Indenture Trustee under the Senior Note Indenture: U.S. Bank National Association, West Side Flats 60 Livingston Ave. EP-MN-WS3C Saint Paul, MN 55107 (Attn: Global Corporate Trust Services); and

f.  the Office of the United States Trustee for the District of Delaware:  844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov) and Jon Lipshie, Esq. (Jon.Lipshie@usdoj.gov)); and

g.  counsel to the Committee.

In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter such Final Order without need for the Final Hearing.

42.  <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

43.  <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

**Dated: February 7th, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**