## EXHIBIT A

## Motion

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **CANO HEALTH, INC.,** *et al.*, | : | **Case No. 24–10164 (      )** |
|  | : |  |
| Debtors.[1] | : | **(Joint Administration Requested)** |
|  | : |  |

---------------------------------------------------------- x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 507(a) AND FED. R. BANKR. P. 6003 AND 6004 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS PROGRAMS IN THE <u>ORDINARY COURSE, AND (II) GRANTING RELATED RELIEF</u>**

Cano Health, Inc. and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases, respectfully represent as follows:

### <u>Relief Requested</u>

1. By this motion (the "**Motion**"), pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of interim and final orders (i) authorizing, but not directing, the Debtors to (a) pay, in their sole discretion, prepetition wages, salaries, reimbursable expenses, and other obligations on account of the Compensation and Benefits Programs (as defined below) in the ordinary course of

---

[1] The last four digits of Cano Health, Inc.'s tax identification number are 4224. A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/CanoHealth. The Debtors' mailing address is 9725 NW 117th Avenue, Miami, Florida 33178.

business and (b) continue to administer the Compensation and Benefits Programs as such were in effect as of the date hereof and as such may be modified, amended, or supplemented from time-to-time in the ordinary course of the Debtors' business, and honor any related administrative costs and obligations arising thereunder, and (ii) granting related relief.

2.      Proposed forms of order granting the relief requested herein on an interim basis and, pending a final hearing on the relief requested herein, on a final basis are annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**"), respectively.

## Background

3.      Beginning on February 4, 2024 (the "**Petition Date**"), the Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

5.      The Debtors, together with their non-debtor affiliates, are one of the largest independent primary care physician groups in the United States. The Debtors commenced their chapter 11 cases on a prearranged basis with the support, pursuant to the terms of a restructuring support agreement (the "**Restructuring Support Agreement**"), of creditors holding approximately 86% of the Debtors' secured revolving and term loan debt and approximately 92% of the Debtors' senior unsecured notes (collectively, the "**Consenting Creditors**").  With the

2

support of the Consenting Creditors, the Debtors are seeking to implement a comprehensive restructuring, which may be implemented through a chapter 11 plan or sale of substantially all of the Debtors' assets.  The Debtors expect to file a chapter 11 plan and disclosure statement in short order, consistent with the terms of the Restructuring Support Agreement, and to efficiently and expeditiously proceed through these cases towards emergence.

6.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Mark Kent in Support of Debtors' Chapter 11 Petitions* (the "**Kent Declaration**") and the *Declaration of Clayton Gring in Support of Debtors' First Day Relief* (the "**Gring Declaration**" and, together with the Kent Declaration, the "**First Day Declarations**"), filed contemporaneously herewith and incorporated by reference herein.

## Jurisdiction

7.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.    Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## The Debtors' Workforce

9.    The Debtors' employees are the lifeblood of their operations and are critical to the Debtors' ability to deliver high-quality and value-based patient health and wellness care to

RLF1 30516778V.1

their members.  Many of the Debtors' employees are highly skilled physicians, nurses, and other specialized medical personnel and clinical staff.  The skills and experience of the Debtors' employees are essential to the Debtors' ongoing operations and the success of these chapter 11 cases.

10.    ***Employees.***  As of the Petition Date, the Debtors employed approximately 300 providers (i.e., physicians, nurse practitioners, and physician assistants) across 95 medical centers and approximately 630 affiliated provider groups.

11.    The Debtors generally classify "full-time employees" as those who are regularly scheduled to work a minimum of 40 hours per week, and who have been employed for at least 90 consecutive calendar days (each, a "**Full-Time Employee**").  As of the Petition Date, the Debtors employed approximately 2,800 Full-Time Employees, including executives, management, operations services (such as clinical staff, care management, and provider services), administrative staff (including front desk services and referral services), and other professionals. The Debtors generally classify as "part-time employees" those individuals who are regularly scheduled to work fewer than 40 hours per week and have been employed for at least 90 consecutive calendar days (each, a "**Part-Time Employee**" and, together with the Full-Time Employees, the "**Employees**").  As of the Petition Date, the Debtors employed approximately ten (10) Part-Time Employees.

12.    In many instances, the Employees are distinctly familiar with the Debtors' healthcare services, clinical practices, processes, and systems and possess specialized knowledge, skills, or experience that cannot be easily replaced.  The Employees also engage in various functions to manage and support the operations of the Debtors' healthcare services, including administrative, marketing, legal, accounting, finance, and management-related tasks.

RLF1 30516778V.1

Additionally, many of the Debtors' medical professionals are in short supply. Due to the high demand for individuals with these skill sets, if the Debtors were to lose certain of their Employees, it would be difficult (and costly) to replace them in the near term with individuals with similar expertise.

13.      ***Supplemental Workforce.***  In the ordinary course of business, the Debtors engage various independent contractors, temporary workers, and other individuals to supplement and support their Employees (collectively, the "**Supplemental Workers**", and together with the Employees, the "**Workforce**").  The Supplemental Workers are either employed directly as independent contractors or as temporary hires through Staffing Agencies (defined below). The Supplemental Workers are engaged in a number of roles, including patient services, legal & compliance, marketing, accounting and finance, and member engagement.  As of the Petition Date, the Debtors utilized the services of approximately 30 Supplemental Workers.  The Supplemental Workers are critical to the Debtors' ability to provide patient care at the highest level.

<u>**Compensation and Benefits Programs**</u>

14.      Prior to the Petition Date, the Debtors maintained various compensation and benefits programs on behalf of their Workforce (collectively, the "**Compensation and Benefits Programs**"), including, without limitation: (a) Compensation Obligations; (b) Bonus Programs; and (c) Employee Benefit Programs (each as defined below).  Except as set forth below, the Debtors are seeking to continue to administer the Compensation and Benefits Programs in the ordinary course of business.  In addition to the direct costs of the various Compensation and Benefits Programs, the Debtors also incur and pay various administrative fees and premiums in connection with the administration of these programs (each, an "**Administrative Fee**"). The Debtors' timely payment of obligations relating to the Compensation and Benefits Programs, including the Administrative Fees, is necessary for the Debtors to maintain ordinary course

5

operations, continue providing quality patient care, and avoid personal financial hardship to the Debtors' Workforce.

15.    As summarized in the following chart and described in further detail below, the Debtors estimate that, as of the Petition Date, they owe approximately $13,287,000 on account of the Compensation and Benefits Programs, approximately $13,191,000 of which will become due and payable during the period between the Petition Date and the date of a final hearing on the Motion (estimated to be approximately thirty (30) days after the Petition Date) (the "**Interim Period**"):

| Compensation and Benefits Program | Approximate Interim Amounts Seeking Authority to Pay | Approximate Final Amounts (Inclusive of Interim Amounts) Seeking Authority to Pay |
|---|---|---|
| Compensation Obligations | $13,031,000 | $13,127,000 |
| Bonus Programs[2] | N/A | N/A |
| Employee Benefits Programs | $160,000 | $160,000 |
| **Total Compensation and Benefit Obligations** | $13,191,000 | $13,287,000 |

16.    The Debtors are not seeking authority pursuant to this Motion to pay any amount in excess of the statutory priority caps imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "**Prepetition Compensation Caps**").

17.    The Debtors believe the vast majority of their Workforce rely exclusively or primarily on the compensation and benefits they receive through the Compensation and Benefits Programs to pay their daily living expenses and support their families. The Workforce will face significant financial consequences if the Debtors are not permitted to continue to administer the Compensation and Benefits Programs in the ordinary course of business. Further, the Debtors'

---

[2] As set forth below, the Debtors are not seeking authority pursuant to this Motion to make any payments in connection with the Bonus Programs and will only do so pursuant to separate motion(s) filed with the Court.

RLF1 30516778V.1

failure to honor their obligations in connection with the Compensation and Benefits Programs likely would result in attrition at a time when the Debtors need to retain their Workforce, and motivate their Workforce to perform at peak efficiency.

18.     Subject to the Court's approval and the terms and conditions set forth below, the Debtors intend to continue to administer their Compensation and Benefits Programs in the ordinary course.  The Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and/or benefits in the ordinary course of business during these chapter 11 cases, in their discretion and without the need for further Court approval.

## A.     Compensation Obligations

19.     The Debtors' outstanding prepetition obligations related to the compensation of their Employees and the Supplemental Workforce (collectively, the "**Compensation Obligations**") are summarized in the following chart and described in further detail below:

| Prepetition Obligations | Approximate Interim Amounts Seeking Authority to Pay | Approximate Final Amounts (Inclusive of Interim Amounts) Seeking Authority to Pay |
|---|---|---|
| Employee Compensation | $8,701,000 | $8,701,000 |
| Supplemental Workforce Compensation | $1,000,000 | $1,000,000 |
| Withholding Obligations | $2,793,000 | $2,793,000 |
| Employee Reimbursable Expenses | $137,000 | $233,000 |
| Payroll Processing Fees | $400,000 | $400,000 |
| **Total Compensation Obligations** | $13,031,000 | $13,127,000 |

7

(i) Employee Compensation

20. The Debtors pay Employees' wages, salaries, commissions, and other compensation on a bi-weekly basis (collectively, the "**Employee Compensation**"). The Debtors' monthly gross payroll totals approximately $16,500,000, including Deductions (as defined below).

21. With respect to unpaid Employee Compensation, the Debtors estimate that, as of the Petition Date, the Debtors owe approximately $8,701,000, including Withholding Obligations and Employer Taxes (as defined below), all of which will become due and payable during the Interim Period. The Debtors do not believe that they owe any Employee Compensation to any Employee in an amount exceeding the Prepetition Compensation Caps. The Debtors request authority to pay outstanding prepetition Employee Compensation due to Employees and to continue to pay Employee Compensation in the ordinary course of business.

(ii) Supplemental Workforce Compensation

22. The Debtors pay Supplemental Workers either directly or pay the agencies that employ and provide the Supplemental Workforce to the Debtors (the "**Staffing Agencies**"), which then make payments to the Supplemental Worker on the Debtors' behalf (collectively, the "**Supplemental Workforce Compensation Obligations**"). The Debtors remit compensation for the Supplemental Workforce as part of their regular accounts payable processes, with the frequency of payment varying depending on the individual contract or the Staffing Agency that manages the applicable Supplemental Workers.

23. It is critical that the Debtors are able to continue honoring their obligations with respect to the Supplemental Workforce Compensation Obligations. Remaining current with respect to the Supplemental Workforce Compensation Obligations will help minimize unnecessary

8

disruption to the Debtors' business at a critical time. The work performed by the Supplemental Workforce is essential to the Debtors' ongoing ability to create revenue.

24. On average, the Debtors generally pay approximately $5,500,000 in aggregate Supplemental Workforce Compensation Obligations each year. As of the Petition Date, the Debtors estimate they owe approximately $1,000,000 in Supplemental Workforce Compensation Obligations, all of which will come due and payable during the Interim Period. The Debtors are not seeking authority to compensate any individual member of the Supplemental Workforce for prepetition services in excess of the Prepetition Compensation Caps.

(iii)   Withholding Obligations

25. In connection with the wages and salaries paid to their Employees, the Debtors are required by federal, state, and local law to withhold from Employees' paychecks amounts related to, among other things, federal, state, and local income taxes and Social Security and Medicare taxes (collectively, the "**Employee Payroll Taxes**") for remittance to applicable federal, state, and local taxing authorities. As of the Petition Date, the Debtors owe approximately $1,680,000 in Employee Payroll Taxes, all of which will become due during the Interim Period. The Debtors are also required to match Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Employer Payroll Taxes**", and together with the Employee Payroll Taxes, the "**Payroll Taxes**"). Employer Payroll Taxes amount to approximately $472,000 per payroll cycle. As of the Petition Date, the Debtors estimate they owe approximately $567,000 in Employer Payroll Taxes, all of which will become due during the Interim Period.

26. During applicable pay periods, the Debtors also deduct (collectively, the "**Deductions**") certain amounts from Employees' paychecks, including garnishments, levies,

9

child support and related fees, 401(k) contributions, and pre-tax contributions for certain of the

Employee Benefit Programs.  The Debtors deduct an aggregate amount of approximately $434,000

in Deductions each pay cycle from Employee wages, and such amounts are subsequently remitted

by the Debtors to the appropriate third-party recipients.  As of the Petition Date, the Debtors have

not forwarded to the appropriate third-party recipients approximately $546,000 in Deductions

already withheld from their prepetition Employee payroll.

27.    As of the Petition Date, the Debtors estimate the total aggregate amount of

accrued but unremitted bi-weekly Deductions, Employer Payroll Taxes, and Employee Payroll

Taxes (collectively, the "**Withholding Obligations**") is approximately $2,793,000, all of which

will come due during the Interim Period.[3]

(iv)    Employee Reimbursable Expenses

28.    In the ordinary course of business, the Debtors reimburse certain Employees

for reasonable and customary business expenses incurred in the scope of their employment

(the "**Employee Reimbursable Expenses**").  Employee Reimbursable Expenses, include, but are

not limited to, reimbursable expenses arising from transportation, lodging, and dining that are

incurred in connection with business travel.   In addition, the Debtors maintain a tuition

reimbursement program that reimburses associates for tuition in an amount not to exceed $7,500

per Employee.   In the twelve (12) months prior to the Petition Date, the Debtors reimbursed, on

average, approximately $100,000 in total aggregate Employee Reimbursable Expenses each

month.   As of the Petition Date, the Debtors estimate that approximately $233,000 in Employee

---

[3] Contemporaneously herewith, the Debtors have sought authority to pay certain prepetition taxes, assessments, fees, and other charges in the ordinary course of business pursuant to a separate motion (the "**Taxes Motion**").  The Debtors are not seeking relief in this Motion to pay prepetition claims that may be covered by the relief sought in the Taxes Motion.

RLF1 30516778V.1

Reimbursable Expenses remain outstanding, approximately $137,000 of which could become due and payable during the Interim Period.  The Debtors seek authority to continue reimbursing Employees for Employee Reimbursable Expenses in the ordinary course of business and to honor any outstanding obligations related to the Employee Reimbursable Expenses, including paying any Administrative Fees related thereto.

(v)     Payroll Fees

29.     The Debtors utilize Automatic Data Processing, Inc. ("**ADP**"), Alight Payment Services ("**Alight**"), and Workday Inc. (**"Workday"**) to administer their payroll obligations. Specifically, ADP provides, among other things, the Debtors' payroll processing system and ensures proper tax and benefits withholdings are made.  Alight and Workday provide the Debtors with benefits administration and payroll processing services, respectively.  The Debtors pay ADP, Alight, and Workday Administrative Fees averaging approximately $320,000 per month in the aggregate (together, the "**Payroll Processing Fees**").  As of the Petition Date, Debtors believe they owe approximately $400,000 in Payroll Processing Fees, all of which will come due and payable during the Interim Period.

**B.     Bonus Programs**

30.     The Debtors invest significant resources to develop and maintain goodwill with their patients, prospective patients, workforce, and referral sources, as well as the community at large. The Debtors' assembled Workforce, in which they invest substantial time, money and resources, consists of medical professionals, such as primary care physicians and nurse practitioners, and clinical support employees, including coding, billing, credentialing, clinical oversight, population health management, among many other areas of operations.  These roles vary from non-management level employees to executive level employees.

11

31.     Prior to the Petition Date, the Debtors implemented various retention programs that provide additional compensation, less Withholding Obligations, to certain key Employees, subject to such Employees' continued employment with the Debtors through a specified date (the "**Retention Bonus Programs**").  The Retention Bonus Programs seek to incentivize participating Employees to remain employed with the Debtors for a specified period in order for the Debtors to retain key talent and maintain the stability and continuity of the business.

32.     Historically, the Debtors also, from time to time, granted special cash bonuses to Employees for various performance-based achievements (the "**Provider Bonus Program**"), and, together with the Retention Bonus Programs, the "**Bonus Programs**").  The Provider Bonus Program seeks to reward individual or team efforts and promote productivity, while enhancing Employee morale.

33.     Each of the Bonus Programs is described in further detail below.  The Debtors are not seeking authority pursuant to this Motion to make any payments under any Bonus Program and will only seek to do so by separate motion.

(i)   Retention Bonus Programs

34.     ***Senior Management KERP.***   In January 2024, in order to retain and incentivize key Employees to focus their efforts during the Debtors' restructuring efforts, the Debtors adopted a key employee retention program (the "**Senior Management KERP**") for five (5) members of senior executive management, including the Debtors' Chief Executive Officer, Interim Chief Financial Officer, Chief Operating Officer, Chief People Officer, and Chief Compliance Officer / General Counsel.[4]  Under the Senior Management KERP, each participant

---

[4] The Debtors also, prepetition and in the ordinary course, implemented certain salary increases to bring these Employees in line with market pay and entered into new employment and severance agreements with each of the participants in the Senior Management KERP.

was entitled to receive a lump sum cash award payable upon execution of a retention agreement, subject to the terms and conditions thereof.  The participants are eligible to retain their award if they have not resigned without good reason or have not been terminated by the Debtors for cause as of the earlier of (i) twelve (12) months following execution of the retention agreement and (ii) the date of consummation of a Restructuring, as defined in the Executive Retention Plan agreements.   In the event a participant does not remain in the Debtors' employ until such date, subject to certain exceptions, he/she will forfeit and be required to disgorge the full amount of the award.   The Debtors paid all amounts due under the Senior Management KERP, totaling approximately $6,705,000, and are not seeking any relief with respect to the Senior Management KERP pursuant to this Motion.

35.    *Management Retention Program*.  In January 2024, the Debtors implemented a Retention Bonus Program by which cohorts of senior management and staff management are retained through January 2025 (the "**Management Retention Program**").  Prior to the Petition Date, the Debtors paid out approximately $2,244,000 under the Management Retention Program.  Approximately $1,585,000 remains due and owing to the various participants under Management Retention Program with the next scheduled payment due to eligible participants in June 2024.  The Debtors are not seeking authority to make postpetition payments with respect to the Management Retention Program.

36.    *Provider and Other Employee Retention Program*.  In January 2024, the Debtors implemented a Retention Bonus Program designed to retain the Debtors' key care providers, including physicians and nurses, in addition to senior management, staff management, and key staff through a twelve (12) month period following the entrance into such retention program (the "*Provider and Other Employee Retention Program*").   Under the Provider and

13

Other Employee Retention Program, each participant is entitled to receive a cash award payable in two equal installments, subject to the terms and conditions thereof. Prior to the Petition Date, the Debtors paid approximately $1,484,000 under the Provider and Other Employee Retention Program. Approximately $1,484,000 remains due and owing under such Retention Program with the next scheduled payment due to eligible participants in June 2024. The Debtors are not seeking authority to make postpetition payments with respect to the Provider and Other Employee Retention Program, and the Debtors intend to seek such authority by separate motion.

37.     ***Additional Employee Retention Program***. In January 2024, the Debtors implemented a Retention Bonus Program that included a mix of salary increases and time-based incentive payments for a broad cohort of 'rank and file' employees, designed to improve retention in important patient facing roles such as Member Engagement, Project Managers, Front Desk, Medical Assistance, Call Center, Patient Coordinators, and Senior Accountants, and incentivize such Employees to remain employed with the Debtors through January 2025 (the "**Additional Employee Retention Program**"). In January 2024, the Debtors paid $45,000 under the Additional Employee Retention Program, and the remaining $494,000 is due to be paid on a monthly basis in the amount of $45,000 per month. The Debtors are not seeking authority to make postpetition payments with respect to the Additional Employee Retention Program and any such request will be done by separate motion.

38.     ***Provider Bonus Program.*** The Debtors have historically engaged in the Provider Bonus Program to incentivize optimal performance for their Employees. The Provider Bonus Program seeks to reward individual or team efforts and promote productivity, while enhancing Employee morale. The Debtors estimate that the average annual cost of the Provider Bonus Program has historically been approximately $5,000,000. As of the Petition Date, the

RLF1 30516778V.1

Debtors believe that they owe approximately $4,279,000 under the Provider Bonus Program. The Debtors are not seeking authority to make postpetition payments with respect to the Provider Bonus Program and any such request will be done by separate motion.

## C.    Employee Benefit Programs

39.    In the ordinary course of business, the Debtors maintain various employment benefit plans and policies, including, without limitation, medical plans, dental plans, vision plans, health savings and flexible spending accounts, life insurance, accidental death and dismemberment insurance, short and long term disability insurance, vacation and other paid time off policies, and other Employee programs (collectively, the "**Employee Benefit Programs**"). The Employee Benefit Programs are generally available to active, Full-Time Employees (collectively, the "**Eligible Employees**").

40.    The Debtors' outstanding prepetition obligations related to Employee Benefits Programs are summarized in the following chart and further described in further detail below:

| Category of Prepetition Obligations | Approximate Interim Amounts Seeking Authority to Pay | Approximate Final Amounts (Inclusive of Interim Amounts) Seeking Authority to Pay |
|---|---|---|
| Health Benefits Plans | $157,000 | $157,000 |
| HSA and FSA | $0 | $0 |
| Welfare and Benefit Programs | $3,000 | $3,000 |
| **Total Benefit Obligations** | $160,000 | $160,000 |

41.    The Debtors believe continuing to honor their obligations under the Employee Benefits Programs, particularly those related to healthcare, reflect their dedication to their Employees, underscores the high value they place on their Employee's welfare, and is essential to maintaining the viability of the Workforce on a go-forward basis.

42.     The Debtors seek authority, in the exercise of their business judgment, to pay prepetition claims (if applicable), to honor obligations, and to continue programs, in the ordinary course of business and consistent with past practice, relating to the Employee Benefit Programs, subject to the Debtors' rights, if any, to modify or discontinue any Employee Benefit Programs to reduce applicable costs or the benefits provided thereunder.

(i)     Health Benefits Plans

43.     Eligible Employees may participate in a number of health and welfare programs, including the Medical Plans, the Vision Plans, and the Dental Plans (each as defined below and, collectively, the "**Health Benefits Plans**").  With respect to Eligible Employees who are terminated, the Debtors also subsidize or continue to provide health benefits including benefits provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**").

44.     The Health Benefits Plans are administered through preferred provider organizations that offer to Employees and their families improved benefits when using a doctor, dentist, pharmacy, or other healthcare provider.  Under the Health Benefits Plans, Employees submit Health Benefits claims on a rolling basis after incurring the relevant medical expenses. Accordingly, the Debtors are unable to ascertain with certainty the prepetition amounts due and outstanding on account of the Health Benefits claims.  On average, the Debtors spend approximately $700,000 per month on Health Benefits premiums, with high variability depending on the number, timeliness, and type of Health Benefits claims submitted.

45.     The Debtors seek authority to pay Health Benefits claims for medical services provided to Eligible Employees and covered dependents but not yet paid by the Health Benefits Providers, and any outstanding Administrative Fees.  The Debtors seek authority to

RLF1 30516778V.1

continue to pay Health Benefits claims, including any Administrative Fees as they come due in the ordinary course of business.

46.    <u>Medical Plans</u>.  The Debtors offer medical and prescription drug benefit programs to Eligible Employees (the "**Medical Plans**").  Approximately 940 Employees are enrolled in the Medical Plans, and United Healthcare is the primary administrator of the Medical Benefit Plans.  The total cost of the Medical Plans to the Debtors is approximately $700,000 per month, including Administrative Fees.  As of the Petition Date, the Debtors estimate they owe approximately $157,000 on account of the Medical Plans, all of which will become due during the Interim Period.

47.    <u>Vision Plans</u>.  Eligible Employees may participate in vision insurance plans administered by United Healthcare (the "**Vision Plans**").  Approximately 1,030 Employees are enrolled in the Vision Plans.  The Vision Plans are paid entirely by the participating Eligible Employees, and participating Employees pay a premium averaging, in total, approximately $12,800 per month.  Accordingly, the Debtors are not seeking to pay any amounts related to the Vision Plans pursuant to this Motion.

48.    <u>Dental Plans</u>.  Similarly, the Debtors offer Eligible Employees the option to participate in dental insurance plans administered by United Healthcare (the "**Dental Plans**").  Approximately 1,300 Full-Time participate in the Dental Plans.  The total cost of the Dental Plans per year is approximately $104,000 (including Administrative Fees), all of which is covered by premiums paid by Eligible Employees.  Accordingly, the Debtors are not seeking to pay any amounts related to the Dental Plans pursuant to this Motion.

49.    <u>COBRA</u>.  Under COBRA, Eligible Employees who are terminated, and covered family members who become ineligible for coverage due to divorce or age, have the right

to continue health benefits for a limited period of time and under certain circumstances. COBRA benefits are provided as required by law.  As of the Petition Date, approximately 40 of the Debtors' former Employees or covered family members are receiving coverage on account of their participation in COBRA.  The Debtors' COBRA program is administered by WageWorks Inc. ("**WageWorks**").  Terminated Employees utilizing COBRA benefits pay premiums directly to WageWorks, which are remitted to the Debtors in connection with and allocated to the Debtors' applicable Health Benefits Plan.  In exchange for administration of the Debtors' COBRA program, WageWorks charges a monthly Administrative Fee of 2%, which fee is covered entirely by participant premium payment.  Accordingly, the Debtors are not seeking to make any prepetition payments related to COBRA pursuant to this Motion.

(ii)    Health Savings Accounts and Flexible Spending Accounts

**(a) Health Savings Account**

50.    Eligible Employees under the Debtors' Medical Plans may enroll in a health savings account administered by Health Equity (an "**HSA**").  Under the terms of the HSA, Eligible Employees may choose to designate a portion of their pre-tax wages or salary towards an HSA up to the maximum amount permitted by the Internal Revenue Service (the "**IRS**"), which they can then use for eligible health care expenses.  The Debtors do not contribute to HSAs.  Currently, approximately 125 Employees contribute to an HSA.  The Debtors remit approximately $50,000 on a bi-weekly basis to Health Equity on account of the HSA. The Debtors seek authority to continue to make these contributions as they come due in the ordinary course of business.

**(b) Flexible Savings Accounts**

51.    Eligible Employees may enroll in a health care flexible spending account and/or a dependent care flexible spending account, administered by Health Equity (together,

18

the "**FSAs**"). Currently, approximately 50 Employees contribute to an FSA. The Debtors remit approximately $26,000 on a bi-weekly basis to Health Equity on account of the FSAs. As of the Petition Date, the Debtors estimate that they are responsible for remitting approximately $52,000 related to the FSAs and the HSA, all of which will become due during the Interim Period.

(iii)    <u>Welfare and Benefit Programs</u>

52.    The Debtors maintain various welfare benefit programs available to Eligible Employees (collectively, the "**Welfare and Benefits Programs**"), including those programs the Debtors pay directly and voluntary programs the Debtors fund through payroll deductions from participating Eligible Employees:

53.    <u>Life and AD&D Insurance</u>. The Debtors provide life and accidental death and dismemberment insurance coverage to Eligible Employees (the "**Basic Life and AD&D Insurance**") at no cost to Eligible Employees through The Hartford Financial Services Group, Inc. (the "**Hartford**"). Additionally, current Eligible Employees may elect to purchase life insurance and accidental death and dismemberment insurance coverage to on a pre-tax basis for spouses and children up to age 26 (the "**Dependent Life Insurance**"). In addition, Eligible Employees may elect to purchase Accident Plan Coverage, Critical Illness Plan Coverage, and Hospital Indemnity Plan Coverage through Aetna. Eligible Employees may also elect to purchase supplemental life insurance to provide up to $1 million in coverage (the "**Supplemental Life Insurance**" and, together with the Basic Life and AD&D Insurance, Accident Plan Coverage, Critical Illness Plan Coverage, and Hospital Indemnity Plan Coverage, and the Dependent Life Insurance, the "**Life and AD&D Insurance Programs**") through The Hartford.

54.    The total cost to the Debtors of the Life and AD&D Insurance Programs is approximately $2,420 each month. As of the Petition Date, the Debtors estimate they owe

19

approximately $3,000 on account of the Life and AD&D Insurance Programs, all of which will become due during the Interim Period. The Debtors seek authority to continue to pay outstanding amounts under the Life and AD&D Insurance Programs as they come due in the ordinary course of business.

55.    <u>Short Term Disability Benefits</u>.  The Debtors provide Eligible Employees with short-term disability benefits (the "**Short-Term Disability Benefits Program**"), which is fully covered by premiums paid by participating Employees.  As a result, the Debtors are not seeking to make any prepetition payments related to the Short-Term Disability Benefits Program pursuant to this Motion. The Short-Term Disability Benefits Program is administered by The Hartford.   Currently, approximately 260 Employees receive coverage under the Short-Term Disability Benefits Program. Eligible Employees are entitled to, among other things, continuation of 60% of their weekly earnings for up to twelve (12) weeks in the event of a short-term medical disability due to a non-work related illness, injury, or pregnancy-related condition.

56.    <u>Long Term Disability Benefits</u>.  The Debtors offer Eligible Employees the opportunity to participate in long-term disability insurance plan programs (the "**LTD Benefits Program**").  The LTD Benefits Program offered by the Debtors replaces 60% of an Eligible Employee's base annual salary, up to $10,000 per month.  The LTD Benefits Program is administered by The Hartford.  Currently, approximately 155 Employees receive coverage under the LTD Benefits Program.  For 2024, the costs are approximately $11,630 per month with respect to the LTD Benefits Program, which is fully covered by premiums paid by participating Employees. As a result, the Debtors are not seeking to make any prepetition payments related to the LTD Benefits Program pursuant to this Motion.

57.    <u>Accident Plan Coverage</u>.    The Debtors offer Eligible Employees the opportunity to obtain accident plan coverage ("**Accident Plan Coverage**").    The Accident Plan Coverage is administered by Aetna Inc. ("**Aetna**").    Currently, approximately 85 Employees receive coverage under Accident Plan Coverage.    For 2024, the costs are approximately $2,200 per month, which is fully covered by premiums paid by participating Employees.    The Debtors do not pay Aetna premiums to administer the program.    As a result, the Debtors are not seeking to make any prepetition payments related to the Accident Plan Coverage pursuant to this Motion.

58.    <u>Critical Illness Plan Coverage</u>. The Debtors offer Eligible Employees the opportunity to obtain critical illness plan coverage ("**Critical Illness Plan Coverage**").    The Critical Illness Plan Coverage is administered by Aetna.    Currently, approximately 60 Employees receive coverage under Critical Illness Plan Coverage.    For 2024, the costs are approximately $1,015 per month, which is fully covered by participating Employees.    As a result, the Debtors are not seeking to make any payments related to the Critical Illness Plan pursuant to this Motion.

59.    <u>Hospital Indemnity Plan Coverage</u>. The Debtors offer Eligible Employees the opportunity to obtain hospital indemnity plan coverage ("**Hospital Indemnity Plan Coverage**").    The Hospital Indemnity Plan Coverage is administered by Aetna.    Currently, approximately 90 Employees receive coverage under Hospital Indemnity Plan Coverage.    In 2024, the costs are approximately $2,600 per month, which is fully covered by participating Employees. As a result, the Debtors are not seeking to make any payments on account of prepetition claims related to the Hospital Indemnity Plan Coverage pursuant to this Motion.

60.    <u>Miscellaneous Assistance Programs</u>.    The Debtors make available a variety of other benefits designed to assist Eligible Employees in managing health, work, and family issues (the "**Miscellaneous Assistance Programs**").    The Miscellaneous Assistance Programs include

21

programs such as Pet Insurance, Legal Plan, Identity Theft Protection and the Associate Assistance Program (the "**AAP**").  All of the Miscellaneous Assistance Programs are Employee funded.  The cost of administering the Miscellaneous Assistance Programs totals approximately $3,200 per month.  The Debtors deduct Employee allocations on a per pay period basis and remit payment to the various service providers.  As of the Petition Date, no amounts are due related to the Miscellaneous Assistance Programs.  The Debtors seek authority to pay such amounts related to the Miscellaneous Assistance Programs in the ordinary course.

      (iv)   Paid Time Off

      61.    The Debtors maintain a policy for providing Eligible Employees paid leave in the form of paid time off ("**Paid Time Off**") and certain other paid leave (collectively, the "**Paid Leave**").[5]  In the ordinary course of business, the Debtors provide Paid Time Off to Eligible Employees.  Eligible Employees are advanced a certain amount of Paid Time Off at the beginning of each year.[6]  Typically, any unused portion does not carry over to the subsequent year.  Employees are not eligible to receive cash payouts for unused Paid Time Off, except in instances where certain employment agreements require, or where the Debtors are required pursuant to applicable state laws.  As of the Petition Date, the Debtors estimate that their Employees have accrued approximately $120,000 in aggregate unused Paid Time Off.  This amount, however, is not a current cash payment obligation.

      62.    The Debtors anticipate their Employees will utilize any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements

---

[5]  In addition, the Debtors provide certain other forms of Paid Leave, many of which are required by law, including paid holidays throughout the year for certain Employees, sick leave, workers' compensation leave, parental leave, bereavement leave, and jury duty.

[6]  Employees hired later in the year receive a pro rata allotment of Paid Time Off.

RLF1 30516778V.1

beyond the Debtors' regular payroll obligations.  Further, by this Motion, the Debtors seek authority, but not direction, to pay any "cash out" amounts due with respect to earned but unused Paid Time Off or other Paid Leave only as required by law and to continue providing the Paid Leave in the ordinary course of business.  The Debtors will not pay out Paid Time Off earned prior to the Petition Date to the extent that doing so would cause the Debtors to exceed the Prepetition Compensation Caps, unless applicable nonbankruptcy law requires such payment.

      (v)    <u>Employee Stock Purchase Plan</u>

63.    Historically, the "**Employee Stock Purchase Plan**" offered a way to purchase Company stock on favorable terms.  In December 2023, the Employee Stock Purchase Plan was discontinued.  All contributions for the period of July 2023 through December 2023 were reversed and refunded to the Employee participants.  The Employee Stock Purchase Plan has been deactivated, and there are no applicable balances outstanding.

      (vi)<u>Retirement Plans</u>

    **a)  401(k) Plan**

64.    The Debtors have previously made contributions to various Employee-related retirement plans (collectively, the "**Retirement Plans**").  The Debtors offer Eligible Employees the opportunity to participate in a 401(k) plan (the "**401(k) Plan**").  Eligible Employees who participate in the 401(k) Plan can make payroll contributions to their 401(k) accounts up to the maximum amount permitted by the IRS.

65.    Each Eligible Employee's 401(k) contributions are deducted automatically from his or her paychecks.  On an annual basis, the Debtors determine whether or not to engage in a match (the "**Discretionary 401(k) Match**") of an Eligible Employee's 401(k) contributions up to certain limitations (the "**401(k) Contributions**").  The 401(k) Plan is administered by ADP.  On

a bi-weekly basis, 401(k) Contributions amount to approximately $215,000. The Debtors pay the quarterly Administrative Fees of $26,000 to ADP. The Debtors pay a quarterly investment advisory fee of $12,000 to Creative Planning, LLC (the "**Investment Advisory Fees**"). As of the Petition Date, the Debtors estimate approximately $280,000 remains outstanding on account of the Investment Advisory Fees and 401(k) Contributions. The Debtors seek authority, in their discretion, to continue the 401(k) Plan, the Discretionary 401(k) Match, the Investment Advisory Fees, and the 401(k) Contributions in respect of the 401(k) Plan.

### **Relief Requested Should Be Granted**

A.     **Payment of Obligations on Account of Compensation and Benefits Programs Is Warranted Under Sections 363(b)(1) and 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

66.     A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *The Dai–Ichi Kangyo Bank, Ltd., Chicago Branch, et al. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *The Committee of Asbestos–Related Litigants and/or Creditors v. Johns–Manville Corp., et al. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In*

24

*re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

   67. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105; *see In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders of Penick Pharmaceutical, Inc. v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").

68.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

69.     Authorizing the Debtors to pay prepetition amounts related to the Compensation and Benefits Programs is in the best interests of the Debtors, their estates, and their economic stakeholders.  Employees are essential to the Debtors' revenue generating capacity both at this critical time and in the normal course of operations, and it is imperative for the Debtors to maintain a workforce that will drive enterprise value.  The loss of valuable Employees, who are the lifeblood of the Debtors' operations, would deplete the Debtors' Workforce and thereby hinder the Debtors' ability to meet customer demands.  Such an outcome would diminish stakeholder confidence in the Debtors' ability to successfully carry out their chapter 11 strategy and to continue operating as a going-concern.  Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at a critical juncture.

70.    Additionally, failure to satisfy the prepetition obligations in connection with the Compensation and Benefits Programs will adversely impact Employee morale and loyalty at a time of perceived uncertainty in light of the commencement of these chapter 11 cases.  The Debtors believe the majority of their Employees rely exclusively or primarily on the compensation and benefits they receive in connection with the Compensation and Benefits Programs to meet their daily living needs.  Employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their obligations in connection with the Compensation and Benefits Programs.  Furthermore, if the Court does not authorize the Debtors to honor their various obligations under the Health Insurance Programs, and the Life Insurance and Disability Programs, Employees will not receive appropriate coverage and, thus, may become obligated to pay certain healthcare-related claims in cases where the Debtors have not paid the respective providers.  The loss of such coverage, particularly during a global healthcare crisis, will result in considerable anxiety for Employees (and likely attrition) at a time when the Employees are most in need and when the Debtors need such Employees to perform at peak efficiency.

71.    Moreover, certain of the obligations under the Compensation and Benefits Programs are entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Specifically, under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $15,150 per individual. 11 U.S.C. § 507(a)(4)(A).  Thus, virtually all the Compensation obligations are priority claims that, in any event, will have to be paid in full.  Accordingly, the Debtors request entry of the Proposed Orders authorizing, but not directing, the Debtors to pay Compensation in

27

an aggregate amount not to exceed the Interim Amount subject to the Prepetition Compensation Caps.

72.     Finally, payment of the Payroll Fees and the other Administrative Fees in connection with the Compensation and Benefits Programs also is necessary.   Without the continued services of the Payroll Processors, the Health Benefits Providers, and the administrators of the Welfare and Benefits Programs, among others, the Debtors will be unable to continue to honor their obligations to Employees in an efficient and cost-effective manner and maintain their employee base, both of which are critical to the smooth functioning of the Debtors' operations.

73.     Accordingly, the relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.

**B.     Payment of Employee Obligations Would Not Prejudice Parties in Interest**

74.     Moreover, the Debtors believe that the vast majority of the prepetition obligations under the Compensation and Benefits Programs are entitled to priority treatment under Bankruptcy Code sections 507(a)(4) (establishing priority treatment for, among others, wages, salaries, commissions, and severance) and 507(a)(5) (establishing priority treatment for contributions to employee benefit plans).   As priority claims, the obligations under the Compensation and Benefits Program are entitled to payment in full before any general unsecured claims asserted against the Debtors can be satisfied.   Accordingly, making the payments covered by these sections of the Bankruptcy Code only will alter the timing, and not the priority, of their

payment and should not prejudice the rights of general unsecured creditors or other parties in interest.

## C.    Payment of Certain Obligations in Connection with the Compensation and Benefits Programs Is Required by Law

75.    The Debtors seek authority to remit the Withholding Obligations to the appropriate third parties.    These amounts principally represent Employee earnings that governments, judicial authorities, and Employees themselves have designated for deduction from their paychecks.    Indeed, certain Deductions, including contributions to the Employee Benefit Programs and child support and alimony payments, are not property of the Debtors' estates because they have been withheld from Employees' paychecks on another party's behalf.    *See* 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold").    Further, federal, state and foreign laws require the Debtors and their officers to make certain tax payments that have been withheld from their Employees' paychecks. *See* 26 U.S.C. § 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that a state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust for federal excise and withholding taxes are not property of a debtor's estate); *DuCharmes & Co., Inc. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).    Because the Deductions and Payroll Taxes are not property of the

29

Debtors' estates, the Debtors request that the Court authorize them to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course of business.

**Applicable Financial Institutions**
**Should Be Authorized to Receive, Process, Honor, and**
**Pay Checks Issued and Transfers Requested to Pay Obligations**

76.    The Debtors further request that the Court authorize the applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested by or on behalf of the Debtors relating to the Obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Obligations. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently. Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of Obligations dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

**Bankruptcy Rule 6003(b) Has Been Satisfied**

77.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" prior to 21 days after

the Petition Date.  Fed. R. Bankr. P. 6003(b).  As explained above and in the Gring Declaration, continuing and maintaining the Compensation and Benefits Programs, and paying related prepetition obligations, are crucial to support the Debtors' Employees, which are the lifeblood of the Debtors' business.  Accordingly, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  The Debtors submit the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Request for Bankruptcy Rule 6004(a) and (h) Waivers

78.     To implement the foregoing successfully, the Debtors seek waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Gring Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Reservation of Rights

79.     Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors or any liens satisfied pursuant to this Motion, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (e) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of

31

any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

80.    Notice of this Motion will be provided to the following parties (each as defined in the First Day Declarations): (a) the Office of the United States Trustee for the District of Delaware (Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov) and Jon Lipshie, Esq. (Jon.Lipshie@usdoj.gov)); (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Internal Revenue Service; (d) the U.S. Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) Gibson, Dunn & Crutcher LLP, 200 Park Ave, New York, NY 10166 (Attn: Scott J. Greenberg, Esq. (SGreenberg@gibsondunn.com), Michael J. Cohen, Esq. (MCohen@gibsondunn.com) and Christina M. Brown, Esq. (christina.brown@gibsondunn.com)) and Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street #1700, Wilmington, Delaware 19801 (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and James O'Neill, Esq. (joneill@pszjlaw.com)), counsel to the Ad Hoc First Lien Group; (g) ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor New York, NY 10019 (Attn: Jeffrey R. Gleit, Esq. (jeffrey.gleit@afslaw.com)), as counsel to the DIP Agent; (h) Freshfields Bruckhaus Deringer US LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Mark F. Liscio, Esq. (mark.liscio@freshfields.com) and Scott D Talmadge, Esq. (scott.talmadge@freshfields.com)), as counsel to the Agent under the CS Credit Agreement; (i) Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, IL 60602 (Attn: Evan Palenschat, Esq. (EPalenschat@proskauer.com)), as counsel to the Agent under the Side-Car Credit Agreement; (j) U.S. Bank National Association, West Side Flats 60 Livingston Ave. EP-MN-WS3C Saint Paul, MN 55107 (Attn: Global Corporate Trust Services), the Indenture Trustee under the Senior Note Indenture; (k) the Banks; and (l) any party that is entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m) (collectively,

RLF1 30516778V.1

the "**Notice Parties**").  Notice of this Motion and any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-1(m).

81.     The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  February 5, 2024
        Wilmington, Delaware

/s/ Amanda R. Steele
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Email: collins@rlf.com
        merchant@rlf.com
        steele@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (*pro hac vice* pending)
Jessica Liou (*pro hac vice* pending)
Matthew P. Goren (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Emails: gary.holtzer@weil.com
        jessica.liou@weil.com
        matthew.goren@weil.com

*Proposed Attorneys for the Debtors*
*and the Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------------- x
                                                                :
In re                                                           :        **Chapter 11**
                                                                :
**CANO HEALTH, INC.**, *et al.*,                                :        **Case No. 24–10164 (       )**
                                                                :
          **Debtors.**[1]                                       :        **(Jointly Administered)**
                                                                :
--------------------------------------------------------------- x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 507(a)
AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING THE DEBTORS TO
(A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES,
AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND
BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS
PROGRAMS IN THE ORDINARY COURSE, AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated February [●], 2024 (the "**Motion**")[2] of Cano Health, Inc.

and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**")

in the above-captioned chapter 11 cases, pursuant to sections 105(a), 363, and 507(a) of title 11 of

the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders

(i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, reimbursable

expenses, and other obligations on account of the Compensation and Benefits Programs in the

ordinary course of business and (b) continue to administer the Compensation and Benefits

Programs as such were in effect as of the date hereof and as such may be modified, amended, or

supplemented from time-to-time in the ordinary course of the Debtors' business, and honor any

---

[1]  The last four digits of Cano Health, Inc.'s tax identification number are 4224.  A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/CanoHealth.  The Debtors' mailing address is 9725 NW 117th Avenue, Miami, Florida 33178.

[2]  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

related administrative costs and obligations arising thereunder and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and §1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declarations and the record of the Hearing; and all objections to the relief requested in the Motion on an interim basis, if any, having been withdrawn, resolved, or overruled; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted on an interim basis to the extent set forth herein.

2.     The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, to pay and honor all prepetition obligations, including Administrative Fees, on account of the Compensation and Benefits Programs in amounts not to exceed $13,191,000 in the aggregate on an interim basis.

| Prepetition Obligations | Interim Amounts |
|---|---|
| Employee Compensation | $8,701,000 |
| Supplemental Workforce Compensation | $1,000,000 |
| Withholding Obligations | $2,793,000 |
| Employee Reimbursable Expenses | $137,000 |
| Payroll Processing Fees | $320,000 |
| **Total Employee Compensation Obligations** | $13,031,000 |
| Health Benefits Plans | $157,000 |
| HSA and FSA | $0 |
| Welfare and Benefit Programs | $3,000 |
| Paid Time Off | $0 |
| Employee Stock Purchase Plan | $0 |
| Retirement Plans | $0 |
| **Total Employee Benefit Obligations** | $160,000 |
| **Aggregate Employee Compensation and Benefit Obligations** | $13,191,000 |

3.     The Debtors and any applicable third parties are authorized to continue to allocate and distribute Deductions and Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and prepetition practices.

4.     The Debtors are authorized, but not directed, to continue to administer the Compensation and Benefits Programs in the ordinary course of business as set forth in this Interim Order.

5.     The Debtors are authorized, but not directed, to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course of business during these chapter 11 cases, in their discretion and without the need for further Court approval, subject to applicable orders entered in these chapter 11 cases, any agreements executed in contemplation of these chapter 11 cases, and the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

3

6.      Notwithstanding any other provision of this Interim Order, nothing in this Interim Order shall authorize the Debtors to make any payment to, or on behalf of, any Employee or Supplemental Worker on account of prepetition wages and other compensation obligations or other prepetition obligations in excess of the statutory caps set forth in sections 507(a)(4) and (5) of the Bankruptcy Code.

7.      Nothing herein shall be deemed to authorize (i) the payment of severance obligations, (ii) the payment of any amounts under the Bonus Programs and any such relief with respect to the Bonus Programs shall be sought pursuant to separate motion of the Debtors; (iii) the Debtors to cash out unpaid Paid Time Off upon termination of an Employee, unless applicable nonbankruptcy law requires such payment, or (iv) the Debtors to make any payment that would violate or permit the violation of section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code); provided that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of obligations in connection with the Compensation and Benefits Programs as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

9.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the Compensation and Benefits Programs are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by

4

the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, electronic funds or automated clearing house transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

10.     The Payroll Processors are authorized to honor and pay all checks presented for payment and electronic payment requests relating to the Compensation and Benefits Programs to the extent directed by the Debtors in accordance with this Interim Order, whether such checks were presented or electronic requests were submitted before or after the Petition Date.

11.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

12.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) an agreement or obligation to pay any claims, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) a waiver of the obligation of any party in interest to file a proof of claim, (f) an approval,

5

assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code, or (g) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

13.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

14.     Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, authorizing the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing (such orders, the "**DIP Order**") and any budget in connection with any such use of cash collateral and/or post-petition debtor-in-possession financing.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

16.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and Local Bankruptcy Rule 9013-1(m).

17.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

18.     A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2024, at _____ (Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court, and served by no later than **4:00 p.m. (Eastern Time) on _____, 2024** on the following:

    a.  proposed attorneys for the Debtors: (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq.

(gary.holtzer@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), Matthew P. Goren, Esq. (matthew.goren@weil.com), and Rachael Foust, Esq. (rachael.foust@weil.com)); and (ii) proposed co-counsel for the Debtors: Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: Michael J. Merchant, Esq. (merchant@RLF.com), and Amanda R. Steele, Esq. (steele@rlf.com));

b.  counsel to the DIP Agent: ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor New York, NY 10019 (Attn: Jeffrey R. Gleit, Esq. (jeffrey.gleit@afslaw.com));

c.  counsel to the Ad Hoc First Lien Group: Gibson, Dunn & Crutcher LLP, 200 Park Ave, New York, NY 10166 (Attn: Scott J. Greenberg, Esq. (SGreenberg@gibsondunn.com), Michael J. Cohen, Esq. (MCohen@gibsondunn.com) and Christina M. Brown, Esq. (christina.brown@gibsondunn.com)) and Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street #1700, Wilmington, Delaware 19801 (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and James O'Neill, Esq. (joneill@pszjlaw.com);

d.  counsel to the Agent under the CS Credit Agreement: Freshfields Bruckhaus Deringer US LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Mark F. Liscio, Esq. (mark.liscio@freshfields.com) and Scott D Talmadge, Esq. (scott.talmadge@freshfields.com));

e.  counsel to the Agent under the Side-Car Credit Agreement: Proskauer Rose LLP, 70 West Madison, Suite 3800, Chicago, IL 60602 (Attn: Evan Palenschat, Esq. (EPalenschat@proskauer.com));

f.  Indenture Trustee under the Senior Note Indenture: U.S. Bank National Association, West Side Flats 60 Livingston Ave. EP-MN-WS3C Saint Paul, MN 55107 (Attn: Global Corporate Trust Services); and

g.  the Office of the United States Trustee for the District of Delaware:  844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov) and Jon Lipshie, Esq. (Jon.Lipshie@usdoj.gov)).

19.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Interim Order.

20.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11
                                                             :
CANO HEALTH, INC., *et al.*,                                 :    Case No. 24–10164 (      )
                                                             :
Debtors.[1]                                                  :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND
507(a) AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING THE DEBTORS TO
(A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES,
AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND
BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS
PROGRAMS IN THE ORDINARY COURSE, AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated [●], 2024 (the "**Motion**")[2] of Cano Health, Inc. and certain

of its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**") in the

above-captioned chapter 11 cases, pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders

(i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, reimbursable

expenses, and other obligations on account of the Compensation and Benefits Programs in the

ordinary course of business and (b) continue to administer the Compensation and Benefits

Programs as such were in effect as of the date hereof and as such may be modified, amended, or

---

[1]  The last four digits of Cano Health, Inc.'s tax identification number are 4224.  A complete list of the Debtors in the
chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at
https://www.kccllc.net/CanoHealth.

[2]  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
in the Motion.

supplemented from time-to-time in the ordinary course of the Debtors' business, and honor any

related administrative costs and obligations arising thereunder and (ii) granting related relief, all

as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and §1334, and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012; and consideration of the Motion and the requested relief being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the

Notice Parties; and such notice having been adequate and appropriate under the circumstances,

and it appearing that no other or further notice need be provided; and the Court having reviewed

the Motion; and the Court having held a hearing to consider the relief requested in the Motion on

an interim (the "**Interim Hearing**") and, if necessary, final basis (the "**Final Hearing**"); and the

Court having entered an order granting the relief requested in the Motion on an interim basis; and

upon the First Day Declarations, the record of the Interim Hearing, the Final Hearing, if any, and

all of the proceedings had before the Court; and all objections to the relief requested in the Motion

on a final basis, if any, having been withdrawn, resolved, or overruled; and the Court having

determined the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and it appearing the relief requested in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay and honor all

prepetition obligations, including Administrative Fees, on account of the Compensation and

Benefits Programs in amounts not to exceed $13,287,000 in the aggregate, absent further order of this Court.

| Prepetition Obligations | Final Amounts (Inclusive of Interim Amounts) |
|---|---|
| Employee Compensation | $8,701,000 |
| Supplemental Workforce Compensation | $1,000,000 |
| Withholding Obligations | $2,793,000 |
| Employee Reimbursable Expenses | $233,000 |
| Payroll Processing Fees | $400,000 |
| **Total Employee Compensation Obligations** | $13,127,000 |
| Health Benefits Plans | $157,000 |
| HSA and FSA | $0 |
| Welfare and Benefit Programs | $3,000 |
| Paid Time Off | $0 |
| Employee Stock Purchase Plan | $0 |
| Retirement Plans | $0 |
| **Total Employee Benefit Obligations** | $160,000 |
| **Aggregate Employee Compensation and Benefit** | $13,287,000 |

3.    Nothing contained in this Final Order shall be deemed to authorize (i) the payment of severance obligations, (ii) the payment of any amounts under the Bonus Programs and any such relief with respect to the Bonus Programs shall be sought pursuant to separate motion of the Debtors; (iii) the Debtors to cash out unpaid Paid Time Off upon termination of an Employee, unless applicable nonbankruptcy law requires such payment, or (iv) the Debtors to make any payment that would violate or permit the violation of section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code); provided that nothing in this Final Order shall prejudice the Debtors' ability to seek approval of such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

3

4.      Notwithstanding any other provision of this Final Order, nothing in this Final Order shall authorize the Debtors to make any payment to, or on behalf of, any Employee or Supplemental Worker on account of prepetition wages and other compensation obligations or other prepetition obligations in excess of the statutory caps set forth in sections 507(a)(4) and (5) of the Bankruptcy Code.

5.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Deductions and Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and prepetition practices.

6.      The Debtors are authorized, but not directed, to continue to administer the Compensation and Benefits Programs in the ordinary course of business.

7.      The Debtors are authorized, but not directed, to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course of business during these chapter 11 cases, in their discretion and without the need for further Court approval, subject to applicable orders entered in these chapter 11 cases, any agreements executed in contemplation of these chapter 11 cases, and the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

8.      The Payroll Processors are authorized to honor and pay all checks presented for payment and electronic payment requests relating to the Compensation and Benefits Programs to the extent directed by the Debtors in accordance with this Final Order, whether such checks were presented or electronic requests were submitted before or after the Petition Date.

9.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of obligations in connection with the Compensation and Benefits Programs as set forth herein, and to replace any prepetition checks or

4

electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

10.     Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, electronic funds or automated clearing house transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

11.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

12.     Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) an agreement or obligation to pay any claims, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) a waiver of the obligation of any party in interest to file a proof of claim, (f) an approval,

5

assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code, or (g) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

13.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

14.     Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, authorizing the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing (such orders, the "**DIP Order**") and any budget in connection with any such use of cash collateral and/or post-petition debtor-in-possession financing.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

15.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

16.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Final Order.

18.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

6

**File a First Day Motion:**

[24-10164 Cano Health, Inc.](#)

Type: bk | Chapter: 11 v | Office: 1 (Delaware)
Assets: y | Case Flag: VerifDue, PlnDue, DsclsDue |

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Amanda R. Steele entered on 2/5/2024 at 5:48 AM EST and filed on 2/5/2024

**Case Name:** Cano Health, Inc.
**Case Number:** [24-10164](#)
**Document Number:** [6](#)

**Docket Text:**
Motion to Pay Employee Wages *(Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507(a) and Fed. R. Bankr. P. 6003 and 6004 for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs in the Ordinary Course, and (II) Granting Related Relief)* Filed By Cano Health, Inc. (Steele, Amanda)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Cano Wages Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/5/2024] [FileNumber=18416533-0]
[36dc8444c5b520f16b3cea23228e8c015b8fce18cb68fbf0d9666e9e999ae5af9634
a1de6833d53938036a23743e871fa995feb02a19aff3eba82e5ff3cc69ec]]

**24-10164 Notice will be electronically mailed to:**

Mark D. Collins on behalf of Debtor Cano Health, Inc.
rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Michael Joseph Merchant on behalf of Debtor Cano Health, Inc.
merchant@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Amanda R. Steele on behalf of Debtor Cano Health, Inc.
steele@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

U.S. Trustee
USTPRegion03.WL.ECF@USDOJ.GOV

**24-10164 Notice will not be electronically mailed to:**