## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CANO HEALTH, INC.,** *et al* | ) | Case No. 24-10164 (KBO) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## GLOBAL NOTES AND STATEMENTS OF LIMITATION, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

**General**

The Schedules of Assets and Liabilities (collectively, the "**Schedules**") and the Statements of Financial Affairs (collectively, the "**Statements**" and, together with the Schedules, the "**Schedules and Statements**") filed by Cano Health, Inc. and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), were prepared, pursuant to section 521 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), by the Debtors' management, with the assistance of the Debtors' advisors.

Although the Debtors' management has made reasonable efforts to ensure the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, inadvertent errors, inaccuracies, or omissions may have occurred and subsequent information or discovery may result in material changes to these Schedules and Statements.

The Schedules and Statements are unaudited and subject to potential adjustment. Because the Schedules and Statements contain unaudited information and remain subject to further review, verification, and potential adjustment, there can be no assurance these Schedules and Statements are complete. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors, and the Debtors reserve all rights, to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected in

---

[1] The last four digits of Cano Health, Inc.'s tax identification number are 4224. A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/CanoHealth. The Debtors' mailing address is 9725 NW 117th Avenue, Miami, Florida 33178.

the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals and have necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals.  The Schedules and Statements have been signed by Eladio Gil, Interim Chief Financial Officer of the Debtors.  Accordingly, in reviewing and signing the Schedules and Statements, Mr. Gil necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals.  Mr. Gil has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

The Schedules and Statements and Global Notes (as defined below) should not be relied upon by any persons for information relating to current or future financial conditions, events, or performances of the Debtors.

These Global Notes and Statements of Limitation, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "**Global Notes**") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

**Description of the Cases and Reporting Date**

Beginning on February 4, 2024 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United State Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**") under Case No. 24-10164 (KBO).  On February 21, 2024, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").  Additional information about these chapter 11 cases, court filings, and claims information is available on the Debtors' restructuring website: https://kccllc.net/canohealth.

---

[2]    These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements.  The fact that the Debtors have prepared a Global Note with respect to any of the Debtor's individual Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.  Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment.

The information contained in (i) Schedules A/B represents data of the Debtors as of December 31, 2023, except with respect to Part 1, Question 3, which such data represents data of the Debtors as of the Petition Date, and (ii) Schedules D, E, F, G, and H represents data of the Debtors as of the Petition Date (such dates, the "**Reporting Date**").

**Basis of Presentation**

The Debtors prepare consolidated financial statements, which are audited annually. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("**GAAP**"). Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the consolidated financial statements prepared by the Debtors.

Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records. The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the particular Debtor entity. However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than reporting by legal entity, it is possible that not all assets, liabilities or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Moreover, given the Company has gone through several acquisitions since 2020, there have been limitations related to historical knowledge, which may impact reporting. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time prior thereto. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time prior thereto.

**Amendment**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

## General Disclosures Applicable to Schedules and Statements

1. **Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims or causes of action. These Global Notes and the Schedules and Statements

shall not be deemed a waiver of any such claims or causes of actions or in any way prejudice or impair the assertion of such claims.

2.      **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the assets, liabilities, claims, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may have improperly characterized, classified, categorized, or designated certain items.  The Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate.

3.      **Claim Designations**.  The Debtors reserve all of their rights to dispute, and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."

4.      **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5.      **Undetermined Amounts.**  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6.      **Court Orders.**  Pursuant to certain final "first day" orders entered by the Bankruptcy Court (the "**First Day Orders**"), the Debtors were authorized (but not directed) to pay or satisfy, among other things, certain prepetition obligations owing to employees, employment vendors, insurance and surety providers, banks and credit card providers, customers, vendors, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are satisfied pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements as is necessary or appropriate.

7.      **Valuation**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets.  Accordingly, unless otherwise indicated, net book values as of the Reporting Date are reflected on the Schedules and Statements.  Exceptions to this include operating cash, cash equivalents, and certain other assets.  Operating cash is presented as bank balances as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may vary materially from fair market values.  Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material.  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

8.    **Liabilities.**  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

9.    **Excluded Assets and Liabilities**.  The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules and Statements.  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements.  The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that have been or may be rejected (if any), to the extent such damage claims exist.  In addition, certain immaterial assets and liabilities may have been excluded.

10.    **Personally Identifiable Information**.  In accordance with the relief granted in the *Order Authorizing Implementation of Procedures to Protect Confidential Patient Information* [Docket No. 90] (the "**Patient Confidentiality Order**") and due to the need to protect confidential information and individual privacy, the home addresses of individuals have been redacted from the Schedules and Statements.

11.    **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any operating leases.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

12.    **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties.  The Debtors may also possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

13.    **Receivables**.  The Debtors have included only the aggregate book value of accounts receivables and have not listed individual customer receivable balance information as the Debtors consider their customer list to be proprietary and confidential.

14.    **Guarantees and Other Secondary Liability Claims**.  The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees.  However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been inadvertently omitted.

15.     **Intellectual Property Rights**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner; however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

16.     **Executory Contracts**.  The Debtors have not set forth executory contracts as assets in the Schedules and Statements.  The Debtors' executory contracts have been set forth in Schedule G.  In addition, the businesses of the Debtors are complex—the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, but inadvertent errors, omissions, or over-inclusion may have occurred.

17.     **Estimates**.  To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

18.     **Fiscal Year**.  Each Debtor's fiscal year ends on December 31.

19.     **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to same.

20.     **Claims of Third-Party Related Entities**.  While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to such parties.  Therefore, to the extent the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are designated as such.

21.     **Interest in Subsidiaries and Affiliates**.  Cano Health, Inc. ("**CHI**") owns the equity interests in Primary Care (ITC) Intermediate Holdings, LLC ("**PCIH**") through 67.72% economic interests and 100% voting interests.  PCIH owns 100% of the membership interests in Cano Health, LLC ("**CH LLC**").  CH LLC directly or indirectly owns 100% of the membership interests in all remaining Debtors. Each Debtor's Schedule A/B Part 4, Question 15.1 or Statement Part 13, Question 25 schedules its ownership interests, if any, in subsidiaries and affiliates.  Assets

such as investments in subsidiaries are listed as undetermined amounts as of the Petition Date because the book values may materially differ from fair market values.

In order for the Debtors to deliver healthcare services to patients in certain markets, the Debtors contracted with entities (the "**Physicians Groups**") that enabled the Debtors to employ healthcare providers to contract with managed care payors. Each Physician Group contracted with the Company through a Management Services Agreement ("**MSA**"), which allowed such Physician Groups to provide certain services. Prior to the Petition Date, the Debtors terminated such MSAs and have sold all or substantially all of the assets of the Physicians Groups.

Notwithstanding such agreements having been terminated, the Schedules and Statements for CH LLC provide financial figures for the Physician Groups, which include Cano Health Texas, PLLC, Cano Health Nevada, PLLC, Cano Health California, PC, CHC Provider Network, PC and Cano Health Illinois, PLLC.

22.    **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

23.    **Insiders**.  For purposes of the Schedules and Statements, the Debtors define "insiders" as current or former officers, directors, anyone in control of a corporate Debtor, and any relative of the foregoing.  The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtors, (b) the extent to which any individual exercised management responsibilities or corporate decision-making authority over the Debtors, or (c) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (2) any other purpose.

24.    **Payments**.  The financial affairs and businesses of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "**Cash Management System**") (as described in greater detail in the Cash Management Motion [Docket No. 3]).  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, as is necessary or appropriate.  Payments made are listed by the legal entity making such payment notwithstanding that many such payments may have been made on behalf of another legal entity.

25.    **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are

unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

26.    **Governmental or Regulatory Investigations.** The Company may, from time to time, be subject to various information requests, inquiries, or investigations from certain local, state, or federal regulatory or governmental agencies or authorities. Such information requests, inquiries, or investigations, may or may not ultimately result in claims asserted against the Company. No such claims have been asserted at this time and accordingly have not been scheduled.

## Specific Notes Regarding Schedule A/B

1.    **Schedule A/B, Part 1, Question 3 – Checking, Savings, or Other Financial Accounts, CDs, etc**. The information in response to this Schedule lists closing bank balances as of the Petition Date. *See **Interest in Subsidiaries and Affiliates** ¶ 21* in the Schedules section of these Global Notes.

2.    **Schedule A/B, Part 2, Questions 5-8 – Deposits and Prepayments**. Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. The amounts listed in Part 2 do not necessarily reflect assets the Debtors will be able to collect or realize. The amounts listed in Part 2 include, among other things, security and other deposits, facilities management prepayments and surety deposits.

Prepaid expenses can consist of cash in advance amounts paid to certain vendors in connection with the Debtors' operations.

**Schedule A/B Part 3, Question 11 – Accounts Receivable**. The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, and other third parties, which are calculated net of any amounts that, as of the Petition Date, may be owed to such parties in the form of offsets or other price adjustments. As a value-based healthcare provider, the Debtors can generate a surplus receivable when medical expenses are lower relative to the gross revenue for a given health plan. In the ordinary course of business, these surplus receivables may be offset with previous deficit payables generated under the health plans. Due to the nature of the surplus calculations, the Debtors do not maintain an aging for their accounts receivable and all accounts receivable is listed as under 90 days. In certain other circumstances, the Debtors' accounts receivables may, in the Debtors' opinion, be difficult to collect from third parties due to the passage of time or other circumstances.

3.    **Schedule A/B, Part 4, Question 15 – Stock and Interests in Incorporated and Unincorporated Businesses**. The Debtors have not performed a valuation analysis regarding such ownership interests listed in response to this Schedule.

4.    **Schedule A/B, Part 7, Question 39 and Question 41 – Office Furniture and Equipment**. The Debtors' office equipment, furnishings, and supplies are capitalized based on their accounting policies and procedures. The asset values are listed at estimated net book value. Equipment construction in progress is listed at cost.

5.      **Schedule A/B, Part 8, Item 50 – Other Machinery and Equipment.**  Net book value amounts listed in this Schedule are reflected on a book basis as recorded on the fixed asset register for each applicable Debtor.  Construction in progress is listed at cost.

6.      **Schedule A/B, Part 10, Items 60 and 61 – Patents, Copyrights, Trademarks, Trade Secrets, Internet Domain Names and Websites.**  The Debtors' ownership interests in their intellectual property are shown as undetermined.  The Debtors have not performed a valuation analysis regarding such assets.

7.      **Schedule A/B, Part 10, Item 63 – Customer Lists, Mailing Lists, or Other Compilations.**  The Debtors collect and retain personally identifiable information about their patients, including names, addresses, phone numbers, medical records, and other information.  Pursuant to the Patient Confidentiality Order, the Debtors have not provided a list of patients, and the Debtors have not performed a valuation analysis regarding such information.

8.      **Schedule A/B, Part 11, Item 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors' tax advisors are in the process of assessing the nature and quantity of available NOLs.  The analysis is not complete as of the time of the filing of this Schedule, and the Debtors have listed the values of the NOLs as undetermined.

9.      **Schedule A/B, Part 11, Item 74 – Causes of Action Against Third Parties.**  Schedule A/B contains information regarding potential and pending litigation involving the Debtors.  In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined.  To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor (even though the litigation may actually impact another Debtor or non-Debtor affiliate).

**Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim.  Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not, nor shall it be deemed, an admission as to the validity of any such lien.  Conversely, the Debtors made reasonable, good faith efforts to include all secured creditors on Schedule D, but may have inadvertently failed to include an existing secured creditor because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights.  The Debtors have reported outstanding letters of credit in Schedule D.  Moreover, certain creditors are currently in possession of the Debtors' property and, therefore,

may have statutory liens in such property.  The Debtors have not done an analysis as to whether such creditors hold secured claims or the value of the property held by such creditors but have identified such parties on Schedule D as secured creditors out of an abundance of caution.

With respect to the Debtors' funded debt, only the administrative agent(s) have been listed for purposes of Schedule D.  The amounts reflected outstanding under the Debtors' prepetition loan facilities reflect principal and interest amounts as of the Petition Date.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The descriptions provided in Schedule D are intended only as a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Any changes to the status of any liens or security rights since the Petition Date may not be adequately reflected in Schedule D.  Therefore, the Debtors may have listed claims with secured status that have changed, or failed to list certain parties whose claims may be secured through rights of setoff, deposits or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights on Schedule D.

## Specific Notes Regarding Schedule E/F

1.    **Schedule E/F, Part 1, Question 1 – Creditors Holding Priority Unsecured Claims**.  The Debtors reserve all rights to dispute the amount and/or the priority status of any claim on Schedule E/F on any basis at any time.  Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F.  Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F.  Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

The Bankruptcy Court entered a Final Order granting authority to the Debtors to pay certain prepetition employee wage and benefit obligations [Docket No. 245] (the "**Employee Wages Final Order**").  Pursuant to the Employee Wages Final Order, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, reimbursable employee expenses, and other obligations on account of compensation and benefits programs.  The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to and have paid or intend to pay pursuant to the Employee Wages Final Order.  The Debtors have not included in the Schedules and Statements (i) accrued paid time off balances as of the Petition Date, and (ii) any prepetition amounts that may be due employees, including provider employees, under any discretionary bonus or similar programs, which were not reconciled prior to the Petition Date.  The Debtors have listed in

Schedule E/F outstanding severance amounts for former employees up to the $15,150 cap. The Debtors will make available to their employees accrued paid time off balances as of the date of their termination of employment with the Debtors in accordance with applicable law and will supplement the Schedules and Statements as necessary.

2.      **Schedule E/F, Part 2, Question 3 – Creditors Holding Nonpriority Unsecured Claims**. The Debtors have used commercially reasonable efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records. Trade payables listed on Schedule E/F contain the prepetition liability information available to the Debtors as of the filing date of the Schedules.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date. Such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding potential and pending litigation involving the Debtors. In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor (even though the litigation may actually impact another Debtor or non-Debtor affiliate).

As of the Petition Date, the Debtors estimate they have approximately one million current and former patients (collectively, the "**Patients**"). The Debtors generally contract with their health plan payors to deliver accountable care in exchange for receiving recurring capitated revenue from the health plans, rather than interfacing with Patients in a fee-for-service context. Patients are, thus, typically billed directly by their healthcare plans and not by the Debtors. In addition, pursuant to the relief granted by the Court under the final refunds order [Docket No. 260] and the bar date order [Docket No. 259], each dated March 5, 2024, the Debtors are authorized to pay any Patient claims for refunds arising in the ordinary course of business and Patients need not file claims for any such refund amount. Accordingly, to the best of the Debtors' knowledge and belief, the Debtors' Patients do not hold claims against the Debtors and have not been listed individually in the Schedules. Moreover, a determination of the amount of any claim that each of the Debtors' current and former patients may hold would be unduly burdensome and cost prohibitive. However, to the extent any current or former patient is a known creditor of the Debtors (e.g., medical malpractice claimant, slip and fall claimant, etc.), the Debtors have endeavored to include such parties in the Schedules.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F. Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

Although the Debtors have made commercially reasonable efforts to identify all known general unsecured claims, the Debtors may not have identified and/or set forth all such claims.

**Specific Notes Regarding Schedule G**

While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts on each of the Debtor's Schedule G, and while the Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many executory contracts as possible and to ensuring the accuracy of Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G. To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F. Similarly, in the ordinary course of business, the Debtors may have issued numerous statements of work or similar documents for services which, to the extent that such statements of work or similar documents constitute executory contracts, are not listed individually on Schedule G. To the extent that services were delivered under statements of work prior to the Petition Date, vendors' claims with respect to such services are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, employment-related agreements, and confidentiality and non-disclosure agreements. Such documents may not be set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, or any document or instrument (including, without limitation, any intercreditor or intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered

into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements may not be listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute. Executory agreements that are oral in nature have not been included in Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors. The Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

## Specific Notes Regarding Schedule H

The Debtors are party to various debt agreements, which were executed by multiple Debtors. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

The inclusion of or failure to include any entity on Schedule H does not constitute a waiver or an admission that such entity is a co-debtor or co-liable with respect to any pending or threatened litigation. The Debtors reserve all rights with respect to any claims related to any pending or threatened litigation.

## Specific Notes Regarding Statements

1.    **Statements, Part 1, Question 1 – Gross Revenue from Business**. The information provided in response to this Statement reflects Gross Revenue by the Debtors in fiscal year 2021, fiscal year 2022 and fiscal year 2023.

2.      **Statements, Part 1, Question 2 – Non-Business Revenue**.  Debtors may receive revenue from various other non-business sources of income which may not be listed in the Statements.  These other revenues are largely immaterial.

3.      **Statements, Part 2, Question 3 – Certain Payments or Transfers to Creditors within 90 Days before the Petition Date**.  The information provided in response to this Statement does not include insider payments (which transfers appear in the response to Part 2 Question 4), transfers to bankruptcy professionals (which transfers appear in response to Part 6, Question 11) or ordinary course compensation of individuals through salaries, wages, or related allowances.

4.      **Statements, Part 2, Question 4 – All Payments or Transfers to Insiders.**  Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date.  The amounts listed reflect the gross amounts paid to such directors and executive officers rather than the net amounts after deducting for tax withholdings. For the avoidance of doubt, the inclusion or omission of any individual in this Statement is not an admission that such individual is or is not an insider of the Debtors.

**5.**      **Statements, Part 3, Question 7 – Legal Actions –** While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to this Statement.  The Debtors reserve all of their rights to amend or supplement their response to this Statement.

**6.**      **Statements, Part 6, Question 11 – Payments Related to Bankruptcy**.  All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on that Debtor's response to this Statement.  Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

**7.**      **Statements, Part 13, Question 25 – Details About the Debtors' Business or** Connections **to Any Business**.  *See **Interest in Subsidiaries and Affiliates** ¶ 21* in the Schedules section of these Global Notes.

8.      **Statements, Part 13, Question 26 – Books, Records, and Financial Statements**. The Debtors financials are publicly filed.

9.      **Statements, Part 13, Question 30 – Payments to Insiders**.  Disbursements to insiders of the Debtors have been listed in response to Statements, Part 2, Question 4.

| Part 1: | Income |
|---------|--------|

**1. Gross Revenue from business**

☐ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | | | | | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From | 1/1/2023 MM/DD/YYY | to | 12/31/2023 MM/DD/YYY | ☑ Operating a business<br>☐ Other _____ | $250,538,363 |
| **For prior year** | From | 1/1/2022 MM/DD/YYY | to | 12/31/2022 MM/DD/YYY | ☑ Operating a business<br>☐ Other _____ | $176,313,885 |
| **For the year before that** | From | 1/1/2021 MM/DD/YYY | to | 12/31/2021 MM/DD/YYY | ☑ Operating a business<br>☐ Other _____ | $0 |

| Part 1: | Income |
|---|---|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| **None** | | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
| --- | --- |

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers — including expense reimbursements — to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
| --- | --- | --- | --- |
| 3.1 AA CORDERO, M.D., P.A.<br>8500 SW 92 ST #102 MIAMI, FL 33156 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $14,895<br>$15,780<br>$18,755 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL AA CORDERO, M.D., P.A.** | | **$49,430** | |
| 3.2 AC MEDICAL ASSOCIATES I, INC.<br>4770 BISCAYNE BLVD. SUITE 1450 MIAMI, FL 33137 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $10,050<br>$9,610<br>$13,300 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers for vendors<br>☐ Services<br>☐ Other _____ |
| **TOTAL AC MEDICAL ASSOCIATES I, INC.** | | **$32,960** | |
| 3.3 ALEX K HSU & JUAN P LOY MD PA<br>2964 N. STATE RD. 7, SUITE 210 MARGATE, FL 33063 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $755<br>$735<br>$2,340 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL ALEX K HSU & JUAN P LOY MD PA** | | **$3,830** | |
| 3.4 AMERICARE MEDICAL CENTER<br>8384 W OAKLAND PARK BLVD SUNRISE, FL 33351 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $3,760<br>$3,340<br>$3,010 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL AMERICARE MEDICAL CENTER** | | **$10,110** | |
| 3.5 ANGELA GONZALEZ MD PA<br>13550 SW 88 ST MIAMI, FL 33186 | 11/17/2023<br>12/15/2023<br>2/2/2024 | $4,840<br>$4,300<br>$4,300 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL ANGELA GONZALEZ MD PA** | | **$13,440** | |
| 3.6 ANTONIO ALEXIS PENA MD PA<br>8600 SW 92ND ST SUITE 101 MIAMI, FL 33156 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $13,630<br>$12,090<br>$16,093 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL ANTONIO ALEXIS PENA MD PA** | | **$41,813** | |
| 3.7 ARTURO R. LOGRONO M.D , P.A.<br>1 S.W 129 AVE SUITE #201 PEMBROKE PINES, FL 33027 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $13,450<br>$13,285<br>$14,657 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL ARTURO R. LOGRONO M.D , P.A.** | | **$41,392** | |
| 3.8 BERTHA M. OLAZABAL, M.D.<br>5803 N.W. 151ST STREET, SUITE 107 MIAMI LAKES, FL 33014 | 11/17/2023<br>12/1/2023<br>12/15/2023<br>2/1/2024 | $15,600<br>$900<br>$16,740<br>$23,560 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers for vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL BERTHA M. OLAZABAL, M.D.** | | **$56,800** | |
| 3.9 BETH AND HOWARD BRAVER, MD,PA<br>20950 NE 27 CT #200 AVENTURA, FL 33180 | 11/17/2023<br>12/15/2023 | $9,310<br>$9,425 | ☐ Secured debt<br>☐ Unsecured loan repayments |

| | | | |
|---|---|---:|---|
| | | 2/1/2024 | $8,835 |
| | | | ☐ Suppliers for vendors |
| | | | ☐ Services |
| | | | ☐ Other _____ |

**TOTAL BETH AND HOWARD BRAVER, MD,PA** | **$27,570**

---

| 3.10 | CARLOS M. MARILL, M.D., P.A. | 11/17/2023 | $6,720 | ☐ Secured debt |
|---|---|---|---:|---|
| | 11440 SW 88 ST SUITE #206 MIAMI, FL 33176 | 12/15/2023 | $8,460 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $7,755 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL CARLOS M. MARILL, M.D., P.A.** | **$22,935**

---

| 3.11 | CCG OF SOUTH FLORIDA, LLC | 11/17/2023 | $5,985 | ☐ Secured debt |
|---|---|---|---:|---|
| | 8251 W. BROWARD BLVD., SUITE 103 PLANTATION, FL 33324 | 12/15/2023 | $5,785 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $6,620 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL CCG OF SOUTH FLORIDA, LLC** | **$18,390**

---

| 3.12 | COLONY SPRINGS MEDICAL CENTER , INC. | 11/17/2023 | $2,400 | ☐ Secured debt |
|---|---|---|---:|---|
| | 7737 N. UNIVERSITY DR SUITE 107 TAMARAC, FL 33321 | 12/15/2023 | $2,430 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $4,705 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL COLONY SPRINGS MEDICAL CENTER , INC.** | **$9,535**

---

| 3.13 | COMPREHENSIVE HEALTH & WELLNESS CENTERS PA | 11/17/2023 | $2,455 | ☐ Secured debt |
|---|---|---|---:|---|
| | 4040 SHERIDAN ST HOLLYWOOD, FL 33021 | 12/15/2023 | $2,455 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $2,455 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL COMPREHENSIVE HEALTH & WELLNESS CENTERS PA** | **$7,365**

---

| 3.14 | DAVID SIMON | 11/17/2023 | $990 | ☐ Secured debt |
|---|---|---|---:|---|
| | 101 S FEDERAL HWY LAKE WORTH, FL 33460 | 12/15/2023 | $990 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $990 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL DAVID SIMON** | **$2,970**

---

| 3.15 | DEERFIELD BEACH MEDICAL CLINIC, PA | 11/17/2023 | $6,560 | ☐ Secured debt |
|---|---|---|---:|---|
| | 5300 W. HILLSBORO BLVD., #216 COCONUT CREEK, FL 33073 | 12/15/2023 | $6,740 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $7,920 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL DEERFIELD BEACH MEDICAL CLINIC, PA** | **$21,220**

---

| 3.16 | DENNIS A. CORTES, MD PA | 11/17/2023 | $2,015 | ☐ Secured debt |
|---|---|---|---:|---|
| | 12600 PEMBROKE RD. SUITE 206 MIRAMAR, FL 33027 | 12/15/2023 | $1,745 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $1,975 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL DENNIS A. CORTES, MD PA** | **$5,735**

---

| 3.17 | EMILIO PANDO MD, PA | 11/17/2023 | $15,590 | ☐ Secured debt |
|---|---|---|---:|---|
| | 12781 MIRAMAR PKWAY SUITE #206 MIRAMAR, FL 33027 | 12/15/2023 | $16,180 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $15,890 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL EMILIO PANDO MD, PA** | **$47,660**

---

| 3.18 | FAMILY PHYSICIAN ASSOCIATES, INC. | 11/17/2023 | $1,920 | ☐ Secured debt |
|---|---|---|---:|---|
| | 4308 ALTON ROAD, SUITE 210 MIAMI BEACH, FL 33140 | 12/15/2023 | $3,380 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $4,360 | ☐ Suppliers for vendors |
| | | | | ☑ Services |
| | | | | ☐ Other _____ |

**TOTAL FAMILY PHYSICIAN ASSOCIATES, INC.** | **$9,660**

---

| 3.19 | FAMILY PRACTICE OF DAVIE, INC. | 11/17/2023 | $2,870 | ☐ Secured debt |
|---|---|---|---:|---|
| | 1150 NORTH UNIVERSITY DRIVE PEMBROKE PINES, FL 33024 | 12/15/2023 | $2,870 | ☐ Unsecured loan repayments |
| | | 2/1/2024 | $4,900 | ☐ Suppliers for vendors |

☑ Services
☐ Other _____

| | | |
|---|---|---|
| **TOTAL FAMILY PRACTICE OF DAVIE, INC.** | | **$10,640** |

**3.20  GEORGE BOCTOR, MD**
4701 N FEDERAL HWY #A-12 FT.LAUDERDALE, FL 33308

| | |
|---|---|
| 11/17/2023 | $5,700 |
| 12/15/2023 | $5,470 |
| 2/1/2024 | $7,290 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GEORGE BOCTOR, MD  $18,460**

**3.21  GERARDO J FRANCO DO PA**
11601 BISCAYNE BLVD SUITE 202 NORTH MIAMI, FL 33180

| | |
|---|---|
| 11/17/2023 | $3,230 |
| 12/15/2023 | $2,090 |
| 2/1/2024 | $2,280 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GERARDO J FRANCO DO PA  $7,600**

**3.22  GILBERT LEUNG MD , PA**
888 N.E. 126TH STREET, SUITE 101 NORTH MIAMI, FL 33161

| | |
|---|---|
| 11/17/2023 | $6,710 |
| 12/15/2023 | $6,575 |
| 2/1/2024 | $6,075 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GILBERT LEUNG MD , PA  $19,360**

**3.23  GILDA MARIA DE LA CALLE, M.D., P.A.**
1435 WEST 49TH PLACE, SUITE 400-B HIALEAH, FL 33012

| | |
|---|---|
| 11/17/2023 | $10,850 |
| 12/15/2023 | $10,920 |
| 2/1/2024 | $16,120 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GILDA MARIA DE LA CALLE, M.D., P.A.  $37,890**

**3.24  GORDON GRENN, D.O., P.A.**
4002 RAULERSON ROAD LAKE WORTH, FL 33463

| | |
|---|---|
| 11/17/2023 | $1,800 |
| 12/15/2023 | $1,680 |
| 2/1/2024 | $1,680 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GORDON GRENN, D.O., P.A.  $5,160**

**3.25  GRISEL MAC WILLIAMS, M.D., P.A.**
810 EAST 39TH PLACE HIALEAH, FL 33013

| | |
|---|---|
| 11/15/2023 | $13,780 |
| 12/15/2023 | $14,650 |
| 2/1/2024 | $17,325 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GRISEL MAC WILLIAMS, M.D., P.A.  $45,755**

**3.26  GUTLEBER MEDICAL GROUP, INC.**
139 N.E. 15 STREET HOMESTEAD, FL 33030

| | |
|---|---|
| 11/17/2023 | $3,800 |
| 12/15/2023 | $3,700 |
| 2/1/2024 | $4,410 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL GUTLEBER MEDICAL GROUP, INC.  $11,910**

**3.27  HECTOR FABREGAS, M.D., P.A.**
1740 LAKESHORE DRIVE WESTON, FL 33326

| | |
|---|---|
| 11/17/2023 | $1,680 |
| 12/15/2023 | $1,770 |
| 2/1/2024 | $5,561 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL HECTOR FABREGAS, M.D., P.A.  $9,011**

**3.28  HERMAN A. NADAL, M.D., P.A.**
6710 TAFT STREET HOLLYWOOD, FL 33024

| | |
|---|---|
| 11/15/2023 | $2,910 |
| 12/15/2023 | $3,315 |
| 2/1/2024 | $4,630 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL HERMAN A. NADAL, M.D., P.A.  $10,855**

**3.29  HERNANDO GIRALDO MD INC**
200 E HALLANDALE BLVD HALLANDALE BEACH, FL 33009

| | |
|---|---|
| 11/17/2023 | $6,000 |
| 12/15/2023 | $6,000 |
| 2/1/2024 | $6,300 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services

| | | | |
|---|---|---|---|
| | TOTAL HERNANDO GIRALDO MD INC | | **$18,900** |

☐ Other _____

| 3.30 | INTERNAL MEDICINE ASSOCIATES OF FL, INC<br>601 N FLAMINGO RD SUITE 309 PEMBROKE PINES, FL 33028 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $3,765<br>$3,780<br>$5,375 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL INTERNAL MEDICINE ASSOCIATES OF FL, INC | | **$12,920** |
|---|---|---|---|

| 3.31 | JEFFREY P. GALLY, M.D., P.A.<br>3880 COCONUT CREEK PARKWAY, SUITE 102 COCONUT CREEK, FL 33066 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $2,700<br>$2,570<br>$2,440 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL JEFFREY P. GALLY, M.D., P.A. | | **$7,710** |
|---|---|---|---|

| 3.32 | JORGE L. BARBEITO, M.D., P.A.<br>259 EAST 49TH STREET HIALEAH, FL 33013 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $2,530<br>$2,705<br>$2,435 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL JORGE L. BARBEITO, M.D., P.A. | | **$7,670** |
|---|---|---|---|

| 3.33 | JOSEPH I. CHI, M.D., P.A.<br>5112 MAGGIONE STREET CORAL GABLES, FL 33146 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $17,103<br>$7,980<br>$7,860 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL JOSEPH I. CHI, M.D., P.A. | | **$32,943** |
|---|---|---|---|

| 3.34 | JOSHUA M. RYCUS, D.O. INC.<br>9750 N.W. 33RD STREET, SUITE 114 CORAL SPRINGS, FL 33065 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $2,730<br>$2,700<br>$3,410 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL JOSHUA M. RYCUS, D.O. INC. | | **$8,840** |
|---|---|---|---|

| 3.35 | JUVENAL E. MARTINEZ, M.D., P.A.<br>8900 S.W. 117TH AVENUE, SUITE C203 MIAMI, FL 33186 | 11/17/2023 | $21,940 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL JUVENAL E. MARTINEZ, M.D., P.A. | | **$21,940** |
|---|---|---|---|

| 3.36 | KENDALL FAMILY MEDICAL CENTER, CORP.<br>11760 SW 40TH ST #112 MIAMI, FL 33175 | 11/17/2023<br>12/15/2023 | $8,625<br>$7,730 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers for vendors
☐ Services
☐ Other _____

| | TOTAL KENDALL FAMILY MEDICAL CENTER, CORP. | | **$16,355** |
|---|---|---|---|

| 3.37 | LARRY LEVINSON D.O., P.A.<br>4700 A SHERIDAN STREET HOLLYWOOD, FL 33021 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $4,180<br>$4,750<br>$7,600 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL LARRY LEVINSON D.O., P.A. | | **$16,530** |
|---|---|---|---|

| 3.38 | LEONCIO G. SANCHEZ, M.D., INC.<br>155 WEST 49TH STREET HIALEAH, FL 33012 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $11,200<br>$11,075<br>$12,280 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | TOTAL LEONCIO G. SANCHEZ, M.D., INC. | | **$34,555** |
|---|---|---|---|

| 3.39 | LOWELL A. ADKINS, M.D., P.A.<br>3135 WEST ATLANTIC BLVD., SUITE 14 & 15 POMPANO BEACH, FL 33069 | 11/17/2023<br>12/15/2023<br>2/1/2024 | $2,835<br>$2,765<br>$5,595 |
|---|---|---|---|

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

| | | | |
|---|---|---|---|
| **TOTAL LOWELL A. ADKINS, M.D., P.A.** | | | **$11,195** |

| 3.40 | LUIS H. LUGO-ARRENDELL, M.D., P.A. | 11/17/2023 | $17,079 |
|---|---|---|---|
| | 1840 WEST 49TH STREET, SUITE 510 HIALEAH, FL 33012 | 12/15/2023 | $14,744 |
| | | 2/1/2024 | $6,210 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL LUIS H. LUGO-ARRENDELL, M.D., P.A.** — $38,033

| 3.41 | MANUEL PEREZ-ESPINOSA, M.D., P.A. | 11/17/2023 | $20,190 |
|---|---|---|---|
| | 3600 WEST FLAGLER STREET MIAMI, FL 33135 | 12/15/2023 | $20,065 |
| | | 2/1/2024 | $20,990 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL MANUEL PEREZ-ESPINOSA, M.D., P.A.** — $61,245

| 3.42 | MARGATE FAMILY MEDICAL CENTER INC | 11/17/2023 | $6,720 |
|---|---|---|---|
| | 3113 NORTH STATE ROAD 7 MARGATE, FL 33063 | 12/15/2023 | $6,240 |
| | | 2/1/2024 | $5,600 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL MARGATE FAMILY MEDICAL CENTER INC** — $18,560

| 3.43 | MARIA T GARCIA-RIVERA M.D. | 11/17/2023 | $2,875 |
|---|---|---|---|
| | 7600 SW 57TH AVE SUITE 102-A SOUTH MIAMI, FL 33143 | 12/15/2023 | $2,870 |
| | | 2/1/2024 | $3,755 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL MARIA T GARCIA-RIVERA M.D.** — $9,500

| 3.44 | MARLENE TAGES CORDOVA, D.O., P.A. | 11/15/2023 | $7,870 |
|---|---|---|---|
| | 600 N. HIATUS RD. #201 PEMBROKE PINES, FL 33026 | | |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers for vendors
☐ Services
☐ Other _____

**TOTAL MARLENE TAGES CORDOVA, D.O., P.A.** — $7,870

| 3.45 | MEDICAL ASSOCIATES OF TAMARAC | 11/17/2023 | $10,880 |
|---|---|---|---|
| | 7875 WEST COMMERCIAL BLVD TAMARAC, FL 33351 | 12/15/2023 | $10,240 |
| | | 2/1/2024 | $11,360 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL MEDICAL ASSOCIATES OF TAMARAC** — $32,480

| 3.46 | NOVA CAT INCORPORATION | 11/17/2023 | $1,100 |
|---|---|---|---|
| | 101 SOUTH FEDERAL HIGHWAY LAKE WORTH, FL 33460 | 12/15/2023 | $1,210 |
| | | 2/1/2024 | $1,210 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers for vendors
☐ Services
☐ Other _____

**TOTAL NOVA CAT INCORPORATION** — $3,520

| 3.47 | ONEL CORRALES, M.D., P.A. | 11/17/2023 | $8,380 |
|---|---|---|---|
| | 4100 NW9 ST SUITE #101 MIAMI, FL 33126 | 12/15/2023 | $7,620 |
| | | 2/1/2024 | $1,140 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL ONEL CORRALES, M.D., P.A.** — $17,140

| 3.48 | ORANGE CARE MEDICAL GROUP | 11/17/2023 | $2,470 |
|---|---|---|---|
| | 11011 SHERIDAN ST #302 COOPER CITY, FL 33026 | 12/15/2023 | $2,660 |
| | | 2/1/2024 | $2,850 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL ORANGE CARE MEDICAL GROUP** — $7,980

| 3.49 | ORCHID MEDICAL GROUP, LLC | 11/17/2023 | $4,580 |
|---|---|---|---|
| | 6489 CORAL WAY MIAMI, FL 33155 | 12/15/2023 | $3,380 |
| | | 2/1/2024 | $5,910 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL ORCHID MEDICAL GROUP, LLC** — $13,870

3.50 PLANTATION MEDICAL CLINIC, P.A.
100 NW 82ND AVE PLANTATION, FL 33324

| | |
|---|---|
| 12/15/2023 | $4,000 |
| 2/1/2024 | $3,800 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL PLANTATION MEDICAL CLINIC, P.A.**    **$11,800**

---

3.51 QUALITY MEDICAL ASSOCIATION OF WEST DELRAY INC
5258 LINTON BLVD SUITE #206 DELRAY BEACH, FL 33484

| | |
|---|---|
| 11/17/2023 | $2,905 |
| 12/15/2023 | $2,905 |
| 2/1/2024 | $2,905 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL QUALITY MEDICAL ASSOCIATION OF WEST DELRAY INC**    **$8,715**

---

3.52 RICARDO O. CALONGE, MD, PA
3661 S MIAMI AVE SUITE 401 MIAMI, FL 33133

| | |
|---|---|
| 11/17/2023 | $3,610 |
| 12/15/2023 | $3,420 |
| 2/1/2024 | $3,420 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL RICARDO O. CALONGE, MD, PA**    **$10,450**

---

3.53 ROSANNA BUIGAS, M.D., P.A.
7265 SW 93 AVE SUITE #203 MIAMI, FL 33173

| | |
|---|---|
| 11/17/2023 | $4,545 |
| 12/15/2023 | $4,845 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL ROSANNA BUIGAS, M.D., P.A.**    **$9,390**

---

3.54 SEACREST MEDICAL GROUP, PA
2848 S SEACREST BLVD BOYNTON BEACH, FL 33435

| | |
|---|---|
| 11/17/2023 | $150 |
| 12/15/2023 | $130 |
| 2/1/2024 | $150 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL SEACREST MEDICAL GROUP, PA**    **$430**

---

3.55 SOUTH FLORIDA INTERNIST GROUP
1312 SW 27 AVENUE MIAMI, FL 33145

| | |
|---|---|
| 11/17/2023 | $1,140 |
| 12/1/2023 | $170 |
| 12/15/2023 | $740 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL SOUTH FLORIDA INTERNIST GROUP**    **$2,050**

---

3.56 STEVEN FIELDS, M.D., P.A.
7100 W 20 AVE # 311 HIALEAH, FL 33016

| | |
|---|---|
| 11/17/2023 | $7,200 |
| 12/15/2023 | $7,050 |
| 2/1/2024 | $6,750 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL STEVEN FIELDS, M.D., P.A.**    **$21,000**

---

3.57 TERESITA D. HERNANDEZ, M.D., P.A.
10020 SW 40TH ST MIAMI, FL 33165

| | |
|---|---|
| 12/15/2023 | $3,600 |
| 2/1/2024 | $3,670 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL TERESITA D. HERNANDEZ, M.D., P.A.**    **$7,270**

---

3.58 TODD KAZDAN, D.O., PA
6099 STIRLING ROAD #220 DAVIE, FL 33314

| | |
|---|---|
| 11/17/2023 | $14,080 |
| 12/15/2023 | $13,760 |
| 2/1/2024 | $13,120 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers for vendors
☑ Services
☐ Other _____

**TOTAL TODD KAZDAN, D.O., PA**    **$40,960**

---

3.59 VIP MEDICAL CENTER, PLLC
2500 E HALLANDALE BEACH BLVD #207 HALLANDALE BEACH, FL 33009

| | |
|---|---|
| 11/17/2023 | $3,350 |
| 12/15/2023 | $3,320 |
| 2/1/2024 | $3,280 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers for vendors
☐ Services
☐ Other _____

**TOTAL VIP MEDICAL CENTER, PLLC**    **$9,950**

3.60  YANETH TRUJILLO, M.D., P.A.
14601 S.W. 29TH STREET, MIRAMAR, FL 33027

| | | |
|---|---|---|
| 11/17/2023 | $3,985 | ☐ Secured debt |
| 12/15/2023 | $4,045 | ☐ Unsecured loan repayments |
| 2/1/2024 | $5,645 | ☐ Suppliers for vendors |
| | | ☑ Services |
| | | ☐ Other _____ |

**TOTAL YANETH TRUJILLO, M.D., P.A.**            **$13,675**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reasons for Payment |
|---|---|---|---|
| 4.1   NONE | | | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the property | Date | Value of property |
|------------------------------|------------------------------|------|--------------------|
| 5.1   NONE | | | |

| | | TOTAL | $0 |

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account number | Amount |
|---|---|---|---|---|
| 6.1  NONE | | | | |

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☑ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---------------------------------|----------------------|-----------------------------|----------------|
| 7.1   NONE | | | |

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of property | Value |
|------------------------------|------------------------|-----------------------|------|-------------------------|-------|
| 8.1  NONE | | | | | |

**Part 4:**    **Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relation to Debtor | Description of the Gifts and Contributions | Dates Given | Value |
|---|---|---|---|---|
| 9.1  NONE | | | | |

| Part 5: | Certain Losses |
|---------|----------------|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the lost occored | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |

10.1  NONE

TOTAL     $0

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

**11. Payments related to bankruptcy**

ist any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor | If not Money, Describe any Property Transfered | Dates | Value |
|---|---|---|---|---|---|
| 11.1   NONE | | | | | |

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device. Do not include transfers already listed on this statement.

☑ None

| Name of trust or Device | Trustee | Describe any Property Transfered | Dates Transfers were Made | Total Amount / Value |
|-------------------------|---------|----------------------------------|---------------------------|----------------------|
| 12.1   NONE | | | | |

| Part 6: | Certain Payments or Transfers |
|---|---|

**13. Transports not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13.1  NONE | | | |

| Part 7: | Previous Locations |
|---------|--------------------|

**14. Previous Addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ None

| Adress | Dates of Occupancy |
|--------|--------------------|
| 14.1   NONE | |

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
— diagnosing or treating injury, deformity, or disease, or
— providing any surgical, psychiatric, drug treatment, or obstetric care?

☐ None

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|
| 15.1 TOWN & COUNTRY 7555 WEST WATERS AVE TAMPA, FL 33619 | CLINIC | YES | | YES |

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No

☑ Yes. State the nature of the information collected and retained.

Patient records

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

    ☐ No. Go to Part 10.

    ☐ Yes. Fill in below:

    Describe: _____    EIN: _____

    Has the plan been terminated?

    ☐ No.

    ☐ Yes.

| **Part 10:** | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
| --- | --- |

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
| --- | --- | --- | --- | --- |
| 18.1  NONE | | | | |

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|
| 19.1   NONE | | | |

| **Part 10:** | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
| --- | --- |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
| --- | --- | --- | --- | --- |
| 20.1  NONE | | | | |

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|----------|-------------------------------------------------------------------|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|--------------------------|--------------------------|----------------------------|-------|
| 21.1  NONE | | | |

| Part 12: | Details About Environmental Information |
|----------|------------------------------------------|

For the purpose of Part 12, the following definitions apply:

■  Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)

■  Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■  Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ None

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|----------------------------|----------------------------------|----------------------|--------|
| 22.1  NONE | | | |

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ None

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23.1   NONE | | | |

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ None

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1  NONE | | | |

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☑ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number (Do not include SSN or ITIN) | Dates Business Existed |
|---|---|---|---|
| 25.1   NONE | | | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service |
|---|---|
| 26a.1  BRIAN D. KOPPY<br>REDACTED | 4/5/2021 - 9/28/2023 |
| 26a.2  BRIAN LEON<br>9725 NW 117TH AVENUE MIAMI, FL 33178 | 4/12/2021 - |
| 26a.3  ELADIO GIL<br>9725 NW 117TH AVENUE MIAMI, FL 33178 | 1/9/2023 - |
| 26a.4  JOSE DANIEL GONZALEZ DOMINGUEZ<br>9725 NW 117TH AVENUE MIAMI, FL 33178 | 12/6/2021 - |
| 26a.5  MARK A. NOVELL<br>REDACTED | 5/12/2021 - 10/9/2023 |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service |
|---|---|
| 26b.1  BDO USA,LLP<br>1450 BRICKELL AVE MIAMI, FL 33131 | - |
| 26b.2  ERNST & YOUNG U.S. LLP<br>200 SOUTH ORANGE AVE ORLANDO, FL 32801 | - |
| 26b.3  KPMG LLP<br>8350 BROAD ST #900 MCLEAN, VA 22102 | - |

**Part 13:** Details About the Debtor's Business or Connections to Any Business

**26. Books, records, and financial statements**

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1   NONE | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and Address |
|---|
| 26d.1   SEE FOOTNOTE [1] |

1.Financial statements are publicly filed

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ None

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1   NONE | | | | |

**Statements – Part 13 – Question 25**
Other businesses in which the debtor has or had an interest



| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None

| Name and Address | Positition and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1   CANO HEALTH, LLC<br>9725 NW 117TH AVENUE MIAMI, FL 33178 | MEMBER | |

**Part 13:**     Details About the Debtor's Business or Connections to Any Business

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ None

| Name and Address | Positition and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29.1  NONE | | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**30. Payments, Distributions, or Withdrawals Credited or Given to Insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ None

| Name and Address of Recipient and Relationship to Debtor | Amount | Amount Description | Dates | Reason for Providing the Value |
|---|---|---|---|---|
| 30.1   SEE SOFA PART 2, QUESTION 4 | - | | | |
| **TOTAL SEE SOFA PART 2, QUESTION 4** | **$0** | | | |
| **TOTAL** | **$0** | | | |

**Part 13:**      Details About the Debtor's Business or Connections to Any Business

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31.1  CANO HEALTH, INC. | 98-1524224 |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32.1  NONE | |

**DGM MSO, LLC**                                              **Case Number:**        **24-10180**

| Part 14: | Signature and Declaration |
|---|---|

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.


**Executed on:**        March 6, 2024


**Signature:**    /s/ Eladio Gil                                    Eladio Gil, Interim Chief Financial Officer
                                                                   **Name and Title**


Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X] No

[ ] Yes